Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

Tayler G. Bragg (*pro hac vice* forthcoming)
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Attorneys for Defendant*
TRUIST FINANCIAL CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUIST FINANCIAL CORPORATION,<br><br>Defendant. | Case No. 2:25-cv-05753-MEMF-PVC<br><br>Assigned to:<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT TRUIST FINANCIAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE**<br><br>Date: October 2, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 8B, 8th Floor<br><br>Action Filed: June 24, 2025<br>Trial Date: Not set |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on October 2, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in United States Courthouse, 350 West First Street, Los Angeles, CA, 90012, Courtroom 8B, 8th Floor, Defendant Truist Financial Corporation, by and through its counsel of record, will and hereby do, move the Court for an order dismissing Plaintiff's Class Action Complaint with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Rules), lack of personal jurisdiction under Rule 12(b)(2), failure to provide sufficient notice under Rule 8, and failure to state a claim under Rule 12(b)(6) (the "Motion"). This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 8, 2025. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all other papers and pleadings on file in this action, and such other oral and/or documentary evidence or argument as may be presented at the time of the hearing on this matter.

Dated: August 15, 2025

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally
Tayler G. Bragg

*Attorneys for Defendant Truist Financial Corporation*

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION .......... 1
II. FACTUAL ALLEGATIONS .......... 2
III. LEGAL STANDARD .......... 4
IV. ARGUMENT .......... 4
A. The Complaint Should Be Dismissed in Its Entirety Because the Court Lacks Subject Matter Jurisdiction Over the Suit. .......... 4
B. The Complaint Should Be Dismissed in Its Entirety Because the Court Lacks Personal Jurisdiction Over Truist. .......... 6
1. There Is No General Jurisdiction Over Truist in California. .......... 7
2. There Is No Specific Jurisdiction Over Truist in California. .......... 8
a. There is No Purposeful Direction Toward California. .......... 8
b. Plaintiff's Claims Do Not Arise Out Of Or Relate To Truist's Forum-Related Activities. .......... 13
c. Subjecting Truist to Jurisdiction in California Would Be Unreasonable. .......... 14
C. The Complaint Should Be Dismissed in Its Entirety Under Rule 8 Because the Allegations Do Not Provide Sufficient Notice. .......... 16
D. The Complaint Should Be Dismissed in Its Entirety Under Rule 12(b)(6) Because Plaintiff Fails to Plead a Plausible Claim for Relief. .......... 17
1. Plaintiff's Wiretap Claims (Counts I, II, and III) Should Be Dismissed. .......... 17
a. The ECPA Claim Should Be Dismissed Because It Is a One-Party Consent Statute. .......... 18
b. The Wiretap Claims Should Be Dismissed Because Plaintiff Fails to Plead the Elements of a Violation. .......... 20
2. Plaintiff's Constitutional Claim (Count IV) Should Be Dismissed Because the Complaint Lacks Factual Support. .......... 23
V. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*In re Auto. Antitrust Cases I & II*,
135 Cal. App. 4th 100 (2005) .......... 13

*Ayer v. White*,
No. 21-cv-08773, 2022 WL 657502 (C.D. Cal. Mar. 4, 2022) .......... 14

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 12, 14

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 16, 17, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Belluomini v. Citigroup, Inc.*,
No. CV 13–01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) .......... 23

*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) .......... 8

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 9, 10

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) .......... 15

*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-CV-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025) .......... 22, 23

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 16, 17, 23, 24

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .......... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .................................................................................7

*Doe v. Amgen Inc.*,
No. 2:23-cv-07448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024).......................25

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1249 (N.D. Cal. 2024).............................................................10

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ..........................................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ............................................................................................7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)...............................................................22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022).......................................................23, 24

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020).............................................................23

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)................4, 5, 6

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)................................................................................9

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025).............21, 22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................24

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)...............................................................19

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024)....................11, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................5, 6

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3rd 931, 938 (N.D. Ill. 2023) .................................................... 21

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......................................................... 18

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) .............................................................................. 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................... 25

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) .................. 10, 15

*Massie v. General Motors Co.*,
No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) .................. 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ............................................................................ 7

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ............................................................. 10

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ........................................................ 11, 12

*Moore v. Rodriguez*,
No. 20-cv-01481, 2021 WL 2222590 (S.D. Cal. June 2, 2021) ........................ 25

*Olson v. Champaign Cnty., Ill.*,
784 F.3d 1093 (7th Cir. 2015) .......................................................................... 16

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
52 F.3d 267 (9th Cir. 1995) ................................................................................ 8

*Ove v. Gwinn*,
264 F.3d 817 (9th Cir. 2001) .............................................................................. 4

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......................................................................... 13

*Rivelli v. Hemm*,
67 Cal. App. 5th 380 (2021) ............................................................................. 13

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................... 19

*Rounds v. Case-Mate Inc.*,
No. 2:24-CV-08531, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ................ 9, 13

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ........ 24

*Sacco v. Mouseflow, Inc.*,
No. 2:20-CV-02330, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ................. 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 10

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir. 2023), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) ........ 1, 8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 8, 12

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ........ 15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........ 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........ 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4, 5

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 20

*Vartanian v. VW Credit, Inc.*, No. 2:11-cv-10776, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 20

*Walden v. Fiore*, 571 U.S. 277 (2014) .......... 13

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 18

**Statutes**

18 U.S.C. § 2510 .......... *passim*

18 U.S.C. § 2511 .......... *passim*

Cal. Pen. Code § 631 .......... 4, 18, 20, 22

Cal. Pen. Code § 632 .......... *passim*

**Other Authorities**

16 C.F.R. § 313 .......... 19

Fed. R. Civ. P. 8 .......... 1, 2, 16

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(2) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 4, 17

Defendant Truist Financial Corporation ("Truist" or "Defendant") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss (the "Motion") Plaintiff's Class Action Complaint (the "Complaint").

## I. INTRODUCTION

This putative class action is one of many filed in the last year based on the alleged presence of commonly used (and, in cases like this one, fully disclosed) website tools on company websites. Here, Plaintiff alleges that Truist, a financial services provider, embedded the LinkedIn Insight Tag into its website, www.truist.com (the "Website"). Compl. ¶ 6. According to Plaintiff, the LinkedIn Insight Tag allowed non-party LinkedIn Corporation ("LinkedIn") to "intercept" information related to "citizenship, housing status, and employment." Compl. ¶¶ 5, 27. Plaintiff claims that the alleged disclosures violate privacy laws and the California Constitution.

Plaintiff's Complaint is deficient in the following respects, each of which independently requires dismissal pursuant to Rules 8, 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"):

*First*, the Complaint should be dismissed under Rule 12(b)(1). Plaintiff fails to allege facts sufficient to establish standing, so the Court lacks subject matter jurisdiction. Plaintiff alleges that he applied for a loan through the Website (just one month before filing this Complaint) and that Truist required Plaintiff to provide certain information, Compl. ¶ 5, but Plaintiff has not alleged facts showing an injury-in-fact, i.e., what information Plaintiff actually provided, whether LinkedIn actually received any information about Plaintiff, whether Plaintiff was aware of the LinkedIn Insight Tag, or if Plaintiff has any facts demonstrating that his data was indeed de-anonymized by LinkedIn.

*Second*, the Complaint should be dismissed under Rule 12(b)(2). Plaintiff fails to demonstrate a basis for the Court to assert personal jurisdiction over Truist. Plaintiff's allegations concede that there is no general jurisdiction here, as Truist is

neither incorporated nor has its principal place of business in California. Compl. ¶ 6. Likewise, Plaintiff cannot show specific jurisdiction because Plaintiff cannot meet his burden to show that the allegations about how Truist's national Website works arise out of conduct that Truist purposefully directed at California.

*Third*, the Complaint should be dismissed under Rule 8. Plaintiff's allegations are too vague and conjectural to provide sufficient notice because Plaintiff fails to allege that his own data, rather than hypothetical data, was improperly collected, disclosed to, and used by LinkedIn.

*Fourth*, the Complaint should be dismissed under Rule 12(b)(6) for several independent reasons because Plaintiff fails to plead a plausible claim for relief for any of his claims. Plaintiff's Electronic Communications Privacy Act ("ECPA") claim (Count I) should be dismissed because it is a one-party consent statute, and Plaintiff's own allegations show that Truist consented to the purported interception by the LinkedIn Insight Tag. Plaintiff's ECPA and California Invasion of Privacy Act ("CIPA") claims (Counts I, II, and III) (the "Wiretap Claims") should be dismissed because Plaintiff fails to plead the elements of a violation under ECPA and CIPA, as Plaintiff has not alleged an intentional and contemporaneous interception of the contents of a communication. Lastly, Plaintiff's constitutional claim (Count IV) should be dismissed because the Complaint is devoid of any factual support, and Plaintiff has no private right of action for damages.

For these reasons, the Court should dismiss the Complaint in its entirety, with prejudice.

## II. FACTUAL ALLEGATIONS

Truist is incorporated in North Carolina and has its principal place of business in North Carolina. Compl. ¶ 6. Truist provides financial products and services, including bank accounts, credit cards, and loans. *Id.* Every page of the Website includes a conspicuous link to Truist's Statement of Online Privacy Practices (the "Privacy Policy"). *See* Truist, *Your privacy at Truist*, https://www.truist.com/privacy

(last visited Aug. 15, 2025). Among other things, the Privacy Policy discloses that Truist may collect "[p]ersonal information submitted on applications, forms, and onsite electronic messaging," such as "non-public information, including credit and income information [and] citizenship." *Id.* The Privacy Policy expressly states that Truist may share this information with affiliates; businesses with which Truist partners to offer products and services; service providers that provide various services to Truist, such as to better market and advertise Truist's services; and other parties when Truist is authorized to share information. *Id.* The Privacy Policy also discloses that "Truist and its online marketing partners may employ various technologies to collect information, including . . . [m]arketing pixels, web beacons, clear GIFs, or other technologies," which "may be placed on certain pages of [Truist's] [W]ebsite, applications, emails, and other marketing initiatives." *Id.* Because Truist's Website is referenced and depicted in part throughout the Complaint, *see, e.g.*, Compl. ¶¶ 58–68, the Privacy Policy on the Website may be considered on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiff is a California resident who alleges that he voluntarily used the Website to apply for a loan, Compl. ¶ 5—one month before engaging an attorney and filing this 146-paragraph Complaint. When using the Website, Plaintiff claims that Truist required him to disclose information related to his citizenship, housing status, and employment. *Id.* According to Plaintiff, Truist embedded the LinkedIn Insight Tag into the Website that allowed LinkedIn to "intercept" Plaintiff's "nonpublic personal information." Compl. ¶ 27. However, these allegations are based on a hypothetical user's use of the Website as reflected in screenshots in the Complaint. Compl. ¶¶ 58–68. Plaintiff does not plead any factual allegation suggesting that LinkedIn actually intercepted any of his data.

Based on these allegations, Plaintiff alleges four causes of action against Truist: (i) violation of ECPA, 18 U.S.C. § 2511, Compl. ¶¶ 82–105; (ii) violation of

CIPA, Cal. Penal Code § 631(a), Compl. ¶¶ 106–17; (iii) violation of CIPA, Cal. Penal Code § 632, Compl. ¶¶ 118–31; and (iv) invasion of privacy under California's Constitution, Compl. ¶¶ 132–46. Plaintiff seeks to represent two classes: a nationwide class of "[a]ll natural persons in the United States who, during the class period, maintained a LinkedIn account and applied for a credit card or loan on the Website," and a California subclass of "[a]ll natural persons in the State of California who, during the class period, maintained a LinkedIn account and applied for a credit card or loan on the Website." Compl. ¶ 74.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see Iqbal*, 556 U.S. at 678 (pleading cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'").

## IV. <u>ARGUMENT</u>

### A. The Complaint Should Be Dismissed in Its Entirety Because the Court Lacks Subject Matter Jurisdiction Over the Suit.

Standing is a prerequisite to the Court's subject matter jurisdiction. *Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025). To establish Article III standing, Plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id.* Thus, "a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* at 424 (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To be "particularized," an injury "must affect the plaintiff in a personal and individual way," and to be "concrete," an injury must be "'real,' and not 'abstract.'" *Id.* at 339–40.

A recent case from this District is instructive. There, a court dismissed for lack of standing after a plaintiff sued a defendant whose website allegedly ran TikTok software that instantly collected information about website visitors and matched it with TikTok's existing data to identify the individual visitors. *Heiting*, 2025 WL 736594, at *1–3. In finding the plaintiff's allegations insufficient to establish standing, the court reasoned that the plaintiff alleged only that she visited the defendant's website and did not allege "any basic facts from which the [c]ourt could infer a concrete injury, like when and how many times she visited the site, what information she provided, what information [d]efendant captured, whether she was aware of [d]efendant's tracking practices, or if she ha[d] any reason to believe that she was indeed de-anonymized." *Id.* at *3; *see Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing for lack of standing and explaining, "though Plaintiff alleges that Defendants *could* gain additional information about [a] visitor such as name, date of birth, and address, and that allegation *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into concrete harm to *him*") (internal quotation marks omitted).

Similarly, here, Plaintiff has not alleged facts sufficient to establish standing.

Plaintiff alleges that he applied for a loan through the Website and that Truist "required Plaintiff to provide private information related to his citizenship, housing status, and employment information." Compl. ¶ 5. Even though Plaintiff alleges through screenshots information that a hypothetical user *could* provide, Compl. ¶¶ 58–68, Plaintiff has not alleged facts showing "what information [Plaintiff actually] provided, what information [of Plaintiff's that Truist] captured, whether [Plaintiff] was aware of [Truist's alleged] tracking practices, or if [Plaintiff] ha[d] any reason to believe that [he] was indeed de-anonymized" by LinkedIn. *Heiting*, 2025 WL 736594, at *3. The Complaint admits that "[u]sers . . . never [even] know . . . what sensitive personal data [the LinkedIn Insight Tag] collects." Compl. ¶ 53

Moreover, Plaintiff's allegations indicate that he did not have reason to believe that LinkedIn deanonymized his information. Plaintiff alleges that, when a hypothetical "user who has *signed in* to LinkedIn . . . is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website." Compl. ¶ 42 (emphasis added). But Plaintiff never alleges that he was signed in to LinkedIn when he applied for the loan. *See* Compl. ¶ 5 (alleging he "applied for a loan through the Website using the same device and browser used to access his LinkedIn account" but not that he was signed in to his LinkedIn account).

For these reasons, Plaintiff has "fail[ed] to convert th[e] hypothetical into concrete harm to *him*." *Kishnani*, 2025 WL 1745726, at *4. Plaintiff lacks standing, and "[a] plaintiff does not have standing to bring a claim on behalf of a class if he does not have standing to bring it for himself." *Id.* (citing *Hawkins v. Comparet–Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001)). The Complaint should be dismissed for lack of subject matter jurisdiction.

**B. The Complaint Should Be Dismissed in Its Entirety Because the Court Lacks Personal Jurisdiction Over Truist.**

"Exercises of personal jurisdiction" are limited "by due process constraints on

the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121–122 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id*. at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum State set the limits for this Court's exercise of personal jurisdiction—a single inquiry here, since "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* at 117. Plaintiff, as the party seeking to invoke personal jurisdiction, bears the burden of establishing that jurisdiction exists. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Based on the allegations in the Complaint, there is neither general nor specific personal jurisdiction over Truist. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This Court lacks general jurisdiction over Truist because California is not Truist's place of incorporation or principal place of business. And this Court lacks specific jurisdiction over Truist because Plaintiff's claims do not arise out of or relate to acts that Truist purposefully directed toward California, and exercising specific jurisdiction would not be reasonable under due process principles. The Complaint should therefore be dismissed for lack of personal jurisdiction.

**1. There Is No General Jurisdiction Over Truist in California.**

General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG*, 571 U.S. at 137. Otherwise, to be subject to general jurisdiction, a corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id.* at 139 & n.19.

There is no basis to find general jurisdiction over Truist. As Plaintiff alleges, Truist is incorporated in North Carolina and has its principal place of business in North Carolina. Compl. ¶ 6. Thus, the Court presumptively lacks general personal jurisdiction over Truist. Moreover, Plaintiff alleges only that Truist "promot[ed],

market[ed], and operat[ed] [] its services to residents within this District and throughout California." Compl. ¶ 8—certainly, nothing to make Defendant "essentially at home" in California. This falls well short of the "exacting standard" for general jurisdiction outside the place of incorporation and principal place of business. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases denying general jurisdiction).

**2. There Is No Specific Jurisdiction Over Truist in California.**

"A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 502 (9th Cir. 2023), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). None of the three requirements are satisfied here.

**a. There is No Purposeful Direction Toward California.**

To satisfy the first requirement that Defendant purposefully directed its alleged action to the forum state, Plaintiff must show that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state" (the "Effects Test"). *Schwarzenegger*, 374 F.3d at 803. "All three parts of the test must be satisfied." *Id.* at 805. Plaintiff cannot meet his burden.

**(i) None of Truist's Alleged Acts Were "Expressly Aimed" at California.**

A "passive" website that simply hosts information "does not qualify as purposeful activity invoking the benefits and protections" of the law of that state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Even an interactive website that allows a party to watch media or purchase goods that occur in California from a national website, without more, is not enough for specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023). Unlike here, an interactive website "expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous[.]" *Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025) (quotation marks and citations omitted). For example, in *Rounds*, the plaintiff did not plausibly allege that the defendant purposefully directed its conduct at California when the plaintiff alleged only that the defendant, through its website, sold and shipped its products to California residents. *Id.* at *5–6. The court reasoned that "the mere sale and shipment of goods to California fails to suggest that [d]efendant's contacts with California are its *own* choice and not random, isolated, or fortuitous," and "nothing in the [complaint] demonstrate[d] [d]efendant's contacts with California did not merely arise from California *consumers'* choice to purchase goods from [d]efendant." *Id.* at *5–6.[1]

[1] *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) does not require a different result. *See Rounds*, 2025 WL 1873999, at *6 ("[T]he Court does not agree that *Briskin* significantly alters the Effects Test."). In *Briskin*, the court concluded jurisdiction was proper because Shopify's alleged tortious conduct deliberately targeted the plaintiff in California. 135 F.4th at 746. Key to the court's decision was the fact that Shopify's business model was predicated on monetizing third-party data collected with its own software using allegedly permanently installed tracking tools on California consumer devices, which differs entirely from Truist's business model. *See id.* The decision did not concern, as is the case here, the conduct of a website operator allegedly employing third-party analytical tools to obtain data about its own customers. Further, Shopify was alleged to have "target[ed] California consumers" by placing software code placed on their devices to track shopping behavior across its merchant network, aggregating this data into detailed profiles, and selling these profiles to third parties, including California merchants. *Id.* at 755–56, 762. The court determined that Shopify's sale of profile products, created from consumer data collected without

Here, Plaintiff has failed to plead facts showing that Truist expressly aims its Website at California. As an initial matter, Plaintiff's allegation that Truist "promot[es], market[s], and operat[es] [] its services to residents within this District and throughout California," Compl. ¶ 8, has nothing to do with his claim. *Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) ("Insofar as Plaintiff suggests that Defendant's *overall sales* to California establish express aiming, that argument is unavailing because a sale is not the intentional act from which Plaintiff's claims here arose."). And importantly, the only jurisdictional contact Plaintiff alleges relevant to his specific claims is *his* unsolicited access of the Website. Compl. ¶ 8 ("Plaintiff, while in California, applied for a loan through Defendant's Website.").

A website is not "expressly aimed" at a specific location where, like here, the purported "harm would have befallen the plaintiff no matter his location." *Sacco v. Mouseflow, Inc*., No. 2:20-CV-02330, 2022 WL 4663361, at *4–5 (E.D. Cal. Sept. 30, 2022) (dismissing CIPA claims for lack of personal jurisdiction). Because the alleged "recording of Plaintiff's visit to [the Website] and the collection of his personal data [] would have occurred no matter the state Plaintiff was in[,] Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." *Id.* at *5; *see Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1249, 1264 (N.D. Cal. 2024) (dismissing privacy claims where "something more" was needed in assessing whether a data processing company directed its activity toward California); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (operation of a commercial website accessible to California residents was not conduct expressly aimed at California); *Martin*, 2024 WL 661173, at *5 (no express aiming when "the website is the sole jurisdictional contact with Plaintiff's claims"); *Mikulsky v. Noom,*

---

disclosure or consent from devices it knew were located in California, was key to finding that Shopify purposefully directed its activities toward California and that exercising jurisdiction in the state was fair. *See id.* at 756.

*Inc*., 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023) (no personal jurisdiction when complaint "fails to include a single allegation detailing how Defendant's 'interactive website' is targeted at California"); *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259, 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024) (no personal jurisdiction based on data tracking through defendant's website).

The reasoning in *Massie v. General Motors Co*. applies here. No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021). In *Massie*, plaintiffs brought a putative class action asserting CIPA and Federal Wiretap Act claims based on the alleged collection of website visitors' "mouse clicks, keystrokes, names, zip codes, phone numbers, email addresses, IP addresses, and locations" with software embedded on the defendant's website. *Id*. at *1. The *Massie* plaintiffs were California residents located in California when they visited GM's "nationally accessible" website. *Id*. As in *Massie*, Truist's Website "lack[s] a forum specific focus as the market for [Defendant's platform] is nationwide." *Id*. at *5. And just as in *Massie*, Truist's alleged use of software to collect Website users' data is not "designed specifically to target and attract Californians" to the Website or its services; the "software at issue [allegedly] records . . . [W]ebsite sessions from users nationwide; no geographic criteria affect which [W]ebsite sessions the software captures." *Massie*, 2021 WL 2142728, at *4; *see Moledina v. Marriott Int'l, Inc*., 635 F. Supp. 3d 941, 948 (C.D. Cal. 2022) (dismissing CIPA case for lack of personal jurisdiction where plaintiff called a Marriott hotel in Texas from California, and Marriott allegedly recorded the call).

In the Complaint, Plaintiff's allegations essentially describe how a national website works—but none of these allegations establish specific jurisdiction. The core factual allegations are that when Plaintiff applied for a loan using Truist's Website, Truist allegedly aided a third-party (LinkedIn) in intercepting Plaintiff's communications. *See* Compl. ¶ 5. Plaintiff does not and cannot plausibly allege that Truist specifically targeted California with its efforts to collect user data. On the

contrary, Plaintiff alleges a company and nationwide practice of collecting and disclosing such data, and that California users were only part of this purported practice. Compl. ¶¶ 6, 8. Such activity cannot be said to be "expressly aimed" at California. "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (citation omitted).

Plaintiff has "thus failed to meet his burden to show that [Truist] purposefully directed its conduct at California," and Truist "is not subject to this Court's personal jurisdiction." *Moledina*, 635 F. Supp. 3d at 950.

**(ii) Truist's Alleged Actions Did Not Cause Harm That Truist Knew Was Likely to be Suffered in California.**

Similarly, Plaintiff cannot show that Truist's alleged conduct caused him an injury that Truist knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Again, the only connection between Truist's alleged conduct and California is Plaintiff's claim that he is a California resident. *See* Compl. ¶ 8. As the Ninth Circuit has explained, even where a defendant's "intentional act eventually caused harm to [the plaintiffs] in California, and [the defendant] may have known that [the plaintiffs] lived in California," "this does not confer jurisdiction" where the defendant did not aim its acts at the forum state. *Id*. at 807; *see Moledina,* 635 F. Supp. 3d at 949 (the mere fact that defendant "knew, or at least reasonably should have known, [they] w[ere] calling from California . . . during the time of the call" did not confer specific jurisdiction). Therefore, even assuming that Plaintiff could show any harm in the first instance (and he cannot), Plaintiff cannot show that Truist knew harm was likely to be suffered by him in California.

**b. Plaintiff's Claims Do Not Arise Out Of Or Relate To Truist's Forum-Related Activities.**

Moreover, Plaintiff's claims do not arise out of or relate to Truist's contacts with California. This requirement "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted). "There must be 'a connection between the forum and the specific claims at issue.'" *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 399 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017)). "If the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction." *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 116 (2005); *see Rounds*, 2025 WL 1873999, at *7 ("Even if the mere selling and shipping of products to California residents were sufficient to demonstrate purposeful aiming, Plaintiff does not allege how Plaintiff's harm arises out of or relates to such conduct. While Plaintiff argues . . . that his privacy injury would never have occurred had the Website not been available to him in California, the Court finds this analysis to be far too reductive.") (cleaned up).

Plaintiff deliberately and unilaterally accessed the Website. *See* Compl. ¶ 5. His claim does not "arise out of contacts that the 'defendant [itself] create[d] with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Nothing about Plaintiff's allegations relating to the data allegedly collected from the Website, or of Truist's purported use of the LinkedIn Insight Tag on the Website, is alleged to have anything to do with Truist's purported contacts with California. As explained *supra*, the Website is accessible from anywhere. Whether or not Plaintiff was in California when he visited the Website, his location at the time of access says nothing about Truist's activities within that city, state, or country. *See, e.g.*, *id*. at 290 (where alleged

injury could have occurred in "California, Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Ayer v. White*, No. 21-cv-08773, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022) ("Plaintiffs' injuries do not aid their jurisdictional argument because Plaintiffs would have suffered the same loss in any state they happened to be in at the time Defendants committed their alleged misconduct in Texas."). If the state of residence of an internet-user alone sufficed to confer jurisdiction, it would result in absurd results where Truist could be sued in any state just because a plaintiff accessed the Website from there. That rule would not "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 362 (2021); *see Kauffman*, 2024 WL 221434, at *3 (rejecting plaintiff's argument that the data capture played a "critical part" in Home Depot's "coordinated efforts to maximize sales revenue in California"). Thus, Plaintiff fails to allege how his claims arise from or relate to Defendant's contacts with California.

**c. Subjecting Truist to Jurisdiction in California Would Be Unreasonable.**

Plaintiff's Complaint should be dismissed for the independent reason "that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla*, 11 F.4th at 983–84. This inquiry is "guided by seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* (citation and quotation omitted). These factors weigh against jurisdiction over Truist.

First, the inquiry concerning the extent of a defendant's purposeful interjection

is "analogous to the purposeful direction" analysis. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). The operation of an interactive website does not rise to the level of purposeful interjection into the forum state's affairs. Accordingly, this factor weighs against exercising jurisdiction. *See Martin*, 2024 WL 661173, at *5 (dismissing case for lack of personal jurisdiction).

Second, litigating in California would impose an unreasonable burden on Truist. Truist is a North Carolina corporation with its principal place of business located in North Carolina. Compl. ¶ 6. It should not be required to litigate a case across the country where Plaintiff has not alleged anything other than his California residence. This factor weighs against exercising jurisdiction.

Third, claims against Truist should be heard by a court where Truist is a corporate citizen when, as here, the claims do not arise out of its contacts with any other State. That is the essence of having forums where businesses are fundamentally at home and can thus have any claims heard against them. Therefore, this factor does not support exercising jurisdiction.

Fourth, although some of Plaintiff's claims are based on California law, there is otherwise no relationship to California except that Plaintiff lives here, which does not favor jurisdiction.

Fifth, the most efficient judicial resolution of the controversy would not be in California. Other than Plaintiff's own documents, relevant records relating to Plaintiff's allegations would be outside California. Moreover, questions relating to Truist's policies and procedures, its Website and the services it provides, its relationships with third party service providers, and so forth, would most likely be answered by witnesses and documents outside California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (the location of the evidence and witnesses is an important consideration in determining jurisdiction). Therefore, this factor does not favor jurisdiction.

Sixth, it is not unreasonably inconvenient to require Plaintiff to litigate his

claim in another forum, when most of the relevant information, documents, and witnesses (besides Plaintiff) are located outside of California.

Seventh, there exists an alternative forum for the dispute based on Plaintiff's own allegations, so this factor also weighs against exercising jurisdiction.

Accordingly, the seven factors favor a finding that the exercise of jurisdiction over Truist would be unreasonable and therefore violate due process.

### C. The Complaint Should Be Dismissed in Its Entirety Under Rule 8 Because the Allegations Do Not Provide Sufficient Notice.

Plaintiff's failure to allege that his data actually was collected and disclosed warrants dismissal. Plaintiff must allege more than a "sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). Here, Plaintiff's 146-paragraph Complaint containing approximately ***two*** paragraphs with facts actually pertaining to Plaintiff,[2] *see* Compl. ¶¶ 5, 8, fails to allege that his own data—rather than theoretical or aggregated data—was improperly collected, disclosed, and used.

Plaintiff instead alleges that Defendant employed the LinkedIn Insight Tag that *could* collect and disclose personal and sensitive information. This generalized allegation is not enough. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing complaint based on allegations of what could happen if a user visited defendant's website and interacted with embedded code). What Plaintiff fails to do is "factually explain [his] personal participation in any of this." *Id.* Instead, Plaintiff asks this Court to infer that he was individually harmed based on "conjectures and hypothetical scenarios" of what users like him might have experienced. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing complaint for failure "to allege any specificity" as to what data "was allegedly disclosed or when it was disclosed"), *partial reconsideration on other*

[2] The rest of the allegations in the Complaint are based on information and belief "by and through the investigation of undersigned counsel." Compl. (introductory paragraph).

*grounds*, No. EDCV 23-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024).

For instance, Plaintiff has not alleged what information he actually provided to Truist, what information of Plaintiff's was actually captured by the LinkedIn Insight Tag, or whether there are any facts demonstrating that Plaintiff's data was actually disclosed or de-anonymized. *See* Compl. ¶ 5. Plaintiff's allegations are based on a hypothetical user's use of the Website as reflected in screenshots in the Complaint. Compl. ¶¶ 58–68. These allegations describe only what *could* occur when the LinkedIn Insight Tag is present—not what *did* occur with respect to Plaintiff specifically. Similarly, when detailing the types of data allegedly collected, Plaintiff offers another generic list of categories of data that *might* have been harvested. *See, e.g.*, Compl. ¶ 2. But having the ability to collect data is not the same as having actually collected or disclosed data. *See B.K.*, 721 F. Supp. 3d at 1064. Similarly, Plaintiff speculates that Truist "disclosed [Plaintiff's] personally identifiable information [] to LinkedIn," Compl. ¶ 5, without explaining how Plaintiff's own data got there or who received it.

These omissions are fatal. As in *Cousin*, Plaintiff's failure to allege facts about his "personal" participation (rather than potential participation) requires dismissal. 681 F. Supp. 3d at 1123. In *Cousin*, the plaintiffs relied on generalized descriptions of what *could* happen when a user interacts with a website containing embedded third-party code. *Id.* at 1124. The court held that plaintiffs could not "maintain their theory of the case absent" factual support showing that they themselves engaged with the website in a manner that resulted in a disclosure of their information. *Id.* at 1123–24. Plaintiff's Complaint here should be dismissed for the same reasons.

### D. The Complaint Should Be Dismissed in Its Entirety Under Rule 12(b)(6) Because Plaintiff Fails to Plead a Plausible Claim for Relief.

#### 1. Plaintiff's Wiretap Claims (Counts I, II, and III) Should Be Dismissed.

Plaintiff brings a claim under Title I of the ECPA, known as the Wiretap Act,

18 U.S.C. § 2511, which is violated when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see* 18 U.S.C. § 2511(1)(c), (d). Plaintiff also pleads claims under CIPA, California's analogue to the Wiretap Act, which likewise makes it unlawful to "intentionally tap[], or make[] any unauthorized connection . . . or [] willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication." Cal. Pen. Code § 631(a). CIPA also makes it unlawful to "intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Pen. Code § 632.

**a. The ECPA Claim Should Be Dismissed Because It Is a One-Party Consent Statute.**

As an initial matter, Plaintiff's ECPA claim should be dismissed because it is a one-party consent statute, and Plaintiff's own allegations show that Truist consented to the purported interception by the LinkedIn Insight Tag. 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent" to interception); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (ECPA "only requires one party to the communication to consent to an interception."). Because Plaintiff's allegations, if accepted as true, claim that Truist was voluntarily using the LinkedIn Insight Tag, *see, e.g.*, Compl. ¶ 6, liability under the ECPA is precluded. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("[C]onsent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act.") (internal quotation marks omitted); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F.

Supp. 3d 1072, 1080–81 (C.D. Cal. 2023).

Although there is a crime-tort exception to this provision under 18 U.S.C. § 2511(2)(d), Plaintiff has failed to plausibly allege that Truist intended to commit a crime or tort here, let alone that that "the ***primary motivation*** or a ***determining*** factor in the [defendant's] actions has been to injure plaintiffs tortiously." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (emphasis added) (citation omitted).

Plaintiff's allegation that Truist "violated a provision of the Gramm-Leach-Bliley Act, 16 C.F.R. § 313," Compl. ¶ 100, is insufficient to show that Truist acted with the purpose of committing a crime. The cited provision (16 C.F.R. § 313) itself does not expressly create a stand-alone criminal offense—it is a regulatory rule, not a criminal statute. Plaintiff does not cite the provision of the Gramm-Leach-Bliley Act that Truist allegedly violated or allege how Truist purportedly committed that crime. Plaintiff alleges only that Truist allegedly disclosed "nonpublic personal information" under the Gramm-Leach-Bliley Act, *see* Compl. ¶¶ 18–27, and that Truist's "pattern of conduct . . . flouts the GLBA's and CalFIPA's respective purposes of enhancing 'financial privacy[.]'" Compl. ¶ 28. Flouting the purpose of a law is not equivalent to committing a crime.

Plaintiff's remaining conclusory allegation that Truist used the LinkedIn Insight Tag "for the purpose of committing a criminal or tortious act" is insufficient to plausibly allege that Truist implemented the LinkedIn Insight Tag with the primary motivation of committing torts on Website visitors. Compl. ¶ 99. To the contrary, the Complaint expressly (and repeatedly) states that Truist "has integrated the LinkedIn Insight Tag . . . to assist with its marketing efforts," Compl. ¶ 29, undermining any suggestion Plaintiff tries to make that a primary purpose was tortious, and precluding application of the crime-tort exception. *See Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (citation omitted) (crime-tort exception does not apply to alleged interception by third-party internet

applications when purpose is "plainly . . . to make money"). For this reason alone, Plaintiff's claim under ECPA should be dismissed.

**b. The Wiretap Claims Should Be Dismissed Because Plaintiff Fails to Plead the Elements of a Violation.**

Plaintiff's Wiretap Claims independently fail because the Complaint fails to plead the elements of a violation under the ECPA or Sections 631 or 632 of CIPA.

Intentionality (Counts I, II, and III). Both the ECPA and CIPA Sections 631 and 632 require an *intentional* interception or eavesdropping. 18 U.S.C. § 2511; Cal. Pen. Code §§ 631, 632. But Plaintiff fails to plead allegations that any interception or eavesdropping of Plaintiff's data by the LinkedIn Insight Tag was intentional. To plead intent, Plaintiff must plead facts showing that Truist "acted consciously and deliberately" in supposedly allowing third parties to intercept communications. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). Plaintiff's allegations here directly undermine any inference of intent, as the Complaint alleges that the LinkedIn Insight Tag is designed to record "online activity" like "clicks," Compl. ¶¶ 57–68. Thus, the Complaint fails "to set forth specific factual circumstances that make plausible [Truist's] intent to record a confidential communication." *Vartanian v. VW Credit, Inc.*, No. 2:11-cv-10776, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).

Interception/Eavesdropping (Counts I, II, and III). Both the ECPA and CIPA Sections 631 and 632 require an intentional *interception or eavesdropping*. 18 U.S.C. § 2511; Cal. Pen. Code §§ 631, 632. But based on Plaintiff's voluntary disclosure of personal information on the Website, Plaintiff cannot plausibly allege that any of his information was "intercepted" via the LinkedIn Insight Tag. Plaintiff's Complaint makes clear that he voluntarily applied for a loan on the Website even though "Defendant required Plaintiff to provide information related to his citizenship, housing status, and employment information." Compl. ¶ 5. Through his use of the Website, Plaintiff also agreed, pursuant to Truist's Privacy Policy, that his

information could be shared with affiliates; businesses with which Truist partners to offer products and services; service providers that provide various services to Truist, such as to better market and advertise Truist's services; and other parties when Truist is authorized to share information. *See supra*, Privacy Policy. The Privacy Policy also discloses that "Truist and its online marketing partners may employ various technologies to collect information, including . . . [m]arketing pixels, web beacons, clear GIFs, or other technologies," which "may be placed on certain pages of [Truist's] [W]ebsite, applications, emails, and other marketing initiatives." *Id.* Such allegations undermine claims that his personal information was improperly intercepted through the use of the LinkedIn Insight Tag. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3rd 931, 938 (N.D. Ill. 2023) ("The court concludes that [defendant] . . . was the intended recipient of the allegedly intercepted communications here. [Defendant] is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").

Separately, Plaintiff fails to allege that the purported disclosure to LinkedIn constitutes eavesdropping under CIPA. Based on Plaintiff's own allegations, the alleged disclosure to LinkedIn occurs separate from, and after, that information is submitted on the Website. *See, e.g.*, Compl. ¶¶ 60, 61, 63, 65, 66 (referencing disclosures ***after*** information is submitted on the Website). "Learning the content of a communication ***after*** it has been sent is not eavesdropping." *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (emphasis added). Allegations that "merely suggest that third parties gain access to [] users' communications at some point, not that third parties 'secretly listen' to the communication as it is being transmitted" to the defendant fail to support an eavesdropping claim because they do not "indicate ***when*** the interception occurs." *Id.* Plaintiff's conclusory allegation that "Defendant facilitated LinkedIn's simultaneous eavesdropping," Compl. ¶ 139, is "[a] single vague and conclusory

allegation" that contradicts his other allegations that the disclosures occurred after and separate from his submissions on the Website. *Hernandez-Silva*, 2025 WL 2233210, at *5 (finding allegation that data is shared "in real time" or "near-real time" is insufficient to demonstrate eavesdropping). Indeed, Plaintiff's tacit admission that the purported transmission to LinkedIn occurs separate from the Website transmission similarly forecloses his claim that LinkedIn was "eavesdropping." *See Cole v. Quest Diagnostics, Inc.*, No. 2:23-CV-20647, 2025 WL 88703, at *2–3 (D.N.J. Jan. 14, 2025) (explaining that pixel transmissions are directly between the browser and nonparty, and thus the nonparty cannot be an "eavesdropper").

Contents of the Communication (Counts I and II). Both the ECPA and CIPA Section 631 require an intentional interception of the *contents of a communication*. 18 U.S.C. § 2511; Cal. Pen. Code §§ 631, 632. The Wiretap Act defines "contents" as "information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8). "The 'contents' of a communication under CIPA and the [] Wiretap Act are the same." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Here, Plaintiff fails to allege that the LinkedIn Insight Tag alleged in the Complaint acted to intercept or eavesdrop the contents of his communications. In fact, as another district court recently held in dismissing CIPA claims, Plaintiff's own allegations show that Plaintiff's "browsers were communicating directly with the alleged eavesdropper because the users' browsers were sending [] requests directly to [third party's] servers." *Cole*, 2025 WL 88703, at *2. Under these allegations, Plaintiff's browser was communicating directly with the purported eavesdroppers, and "there [was] no need for the eavesdropper to acquire that information from transmissions to which they are not a party." *Id.* at *3 (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 140-41 (3d Cir. 2015)) (cleaned up). Accordingly, Plaintiff's allegations foreclose his argument that the LinkedIn Insight Tag was intercepting the contents of

communications sent to some other intended party. *See id.* (granting motion for reconsideration and holding there was no CIPA liability for use of third party tools).

For these reasons, the Wiretap Claims should be dismissed.

**2. Plaintiff's Constitutional Claim (Count IV) Should Be Dismissed Because the Complaint Lacks Factual Support.**

The "California Constitution and the common law both set a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, No. CV 13–01743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). "Plaintiffs must plead that: (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion [is] so serious . . . as to constitute an egregious breach of the social norms' such that the breach is highly offensive." *Cousin*, 681 F. Supp. 3d at 1126 (alteration and omission in original and internal quotation marks omitted); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (explaining courts consider "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests," and an invasion of privacy "must be sufficiently serious in 'nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right'").

In determining whether there was a reasonable expectation of privacy, "[c]ourts consider the customs, practices, and circumstances surrounding the data collection, including the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (Cal. 1994)). Even if there is reasonable expectation of privacy in certain internet information, "data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (internal quotation marks omitted) (holding that plaintiffs failed to sufficiently plead violation

of California privacy laws when Google allegedly tracked engagement with smartphone applications because collection of such data was not harmful and the motives were not deceitful). "The analysis of whether an invasion of privacy is highly offensive must [] focus on the degree to which the invasion is unacceptable as a matter of public policy." *Cousin*, 681 F. Supp. 3d 1126 (internal quotation marks omitted). "'Highly offensive to a reasonable person' requires a 'holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.'" *Hammerling*, 615 F. Supp. 3d at 1090.

Even disclosure of personal information, like social security numbers, does not constitute an egregious breach of social norms to establish an invasion of privacy claim. *See, e.g.*, *Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (holding the theft of a retail store's laptop containing personal information, including social security numbers, of job applicants did not constitute an egregious breach of privacy and was not sufficient to state a claim for the California constitutional right to privacy); *B.K.*, 721 F. Supp. 3d at 1067 (finding plaintiffs' claims did not rise to the level of an egregious breach of the social norms that is highly offensive when plaintiffs used defendant's website for routine medical searches and inquiries and did not sufficient plead that defendant disclosed plaintiffs' medical information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (holding the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy sufficient to prove a serious invasion of a privacy interest).

Here, Plaintiff fails to allege facts showing what personal information, if any, he disclosed to Truist; what personal information, if any, of Plaintiff's was actually disclosed to LinkedIn; and what, basis, if any, Plaintiff has that LinkedIn actually de-

anonymized any of Plaintiff's actual personal data. Instead, Plaintiff merely makes a series of generalized and conjectural allegations that Truist intercepted and disclosed personal information to LinkedIn. *See, e.g.*, Compl. ¶¶ 5, 94–96, 99. Plaintiff's allegations are based on a hypothetical user's use of the Website as reflected in screenshots in the Complaint. Compl. ¶¶ 58–68. The absence of any factual support for Plaintiff's allegations forecloses his claims. *See, e.g.*, *Doe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (dismissing invasion of privacy claims, including under the California Constitution, where "Plaintiff's allegations that the presence of the Meta Pixel on [d]efendant's website, combined with [the defendant's] purported configurations of the Meta Pixel, resulted in the disclosure of her personal information, [was] generic and devoid of factual support"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claims, including under the California Constitution, when the plaintiffs "postulate[d]" that "third parties could, through inferences, de-anonymize this data" but it was "not clear that anyone ha[d] actually done so, or what information, precisely, these third parties ha[d] obtained").

Further, to the extent that Plaintiff seeks damages under his constitutional invasion of privacy claim, his claim fails. "California's constitutional provision protecting the right of privacy" only "supports a cause of action for an injunction, but it does not confer on a litigant a private right of action for damages." *Moore v. Rodriguez*, No. 20-cv-01481, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (internal quotation marks omitted).

## V. CONCLUSION

For these reasons, Truist respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.

[signature block to follow]

Dated: August 15, 2025 SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally
Tayler G. Bragg

*Attorneys for Defendant Truist Financial Corporation*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Truist Financial Corporation, certifies that this brief complies with the 25-page limit set by Section VIII.C of this Court's Civil Standing Order.

Dated: August 15, 2025 SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally