**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRIS GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TRUIST FINANCIAL CORPORATION

Defendant.

Case No. 2:25-cv-5753

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Date: November 20, 2025
Time: 10:00 a.m.
Courtroom: 8B

Hon. Maame Ewusi-Mensah Frimpong

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ... 1
ARGUMENT ... 2
I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE AND FEDERAL WIRETAPPING CLAIMS ... 2
II. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ... 4
A. Defendant Purposefully Directed Its Conduct To The Forum State ... 5
1. Defendant Committed An Intentional Act ... 5
2. Defendant Expressly Aimed Its Actions At California ... 6
3. Defendant's Claim That It Did Not Know The Harm It Caused Was Likely To Be Suffered In California Is Without Merit ... 8
B. Plaintiff's Claims Arise From Or Relate To Defendant's Contacts Within The State ... 9
C. Subjecting Defendant To Jurisdiction In California Is Not Unreasonable ... 10
III. PLAINTIFF'S CLAIMS ARE SUFFICIENT UNDER RULE 8 ... 12
IV. PLAINTIFF SUFFICIENTLY PLEADS HIS WIRETAPPING CLAIMS ... 13
A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose ... 13
B. Defendant's Conduct Was Intentional ... 15
C. Plaintiff Never Consented To Defendant's Wiretapping ... 16
D. Defendant Intercepted The Contents Of Plaintiff's Communications ... 18
E. Defendant's Interceptions Occurred While Plaintiff's Communications Were "In Transit" ... 19
V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ... 20
CONCLUSION ... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*AMA Multimedia, Ltd. Liab. Co. v. Wanat*,
970 F.3d 1201 (9th Cir. 2020)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................12

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014)....................6

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025)....................passim

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................15, 18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................5

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)....................20

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................20

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020)....................2, 3

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011)....................7

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................5, 8

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997)....................6

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)....................13

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......................................................13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ...........................................................................................9

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025)..........................................................2

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023).........................................................2

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. July 27, 2023) ......................................................2

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..........................................................21, 22

*Heiting v. FKA Distrib. Co. LLC*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) ........................................................3

*Heiting v. FKA Distributing Co.*,
LLC, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ...................................................3

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)...............................................................................6

*HiQ Labs, Inc. v. LinkedIn Corp.*,
938 F. 3d 985 (9th Cir. 2019)...............................................................................6

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).............................................................................2, 21

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...............................................................15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...............................................................18

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ...............................................................15

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013)...............................................................................8

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 13

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 16

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) .......... 4

*Keniston v. Roberts*,
717 F.2d 1295 (9th Cir. 1983) .......... 22

*Kishani v. Royal Caribbean Cruises,*
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 3

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 19, 20

*LyricFind, Inc. v. Musixmatch*,
2025 WL 2537755 (N.D. Cal. Sept. 3, 2025) .......... 10, 11

*Massie v. General Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... 7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 7

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 17

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 16

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 13, 14, 16

*R.S. v. Prime Healthcare Srvs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 13

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 18, 19

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... 14

*Rio Properties, Inc. v. Rio Intern. Interlink*,
284 F. 3d 1007 (9th Cir. 2002) .......... 7

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 12

*Rodriguez v. Google LLC*,
2021 WL 2026726 n.8 (N.D. Cal. May 21, 2021) .......... 14

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 17

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) .......... 10, 11

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 6

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 5

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... passim

*Silk v. Bond*,
65 F.4th 445 (9th Cir. 2023) .......... 10, 11

*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .......... 16

*Snyder v. G6 Hospitality LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) .......... 16, 17, 18

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 20

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .......... 15, 19, 20

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 7, 11

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) .......... 12, 20

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 4

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) .......... 6

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 12

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 17, 18

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 13

Cal. Civ. Proc. Code § 410.10 .......... 4

Cal. Fin. Code § 4050 .......... 2, 11

Cal. Fin. Code § 4051 .......... 1

Cal. Fin. Code § 4052 .......... 21

**Regulations**

16 C.F.R. § 313 .......... 1

16 C.F.R. § 313.3 .......... 2, 21

## INTRODUCTION

Congress and the California legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051; *see also Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the ECPA and CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information). Despite such duties to prevent consumers' private information from disclosure, Defendant Truist Financial Corporation ("Defendant") unlawfully intercepts and discloses its consumers' personal and financial information to third parties when consumers apply for financial products and services on its website, www.truist.com (the "Website").

Plaintiff is a resident of California and applied for a loan on Defendant's Website. Class Action Complaint ¶ 5 (ECF No. 1) ("Compl."). Unbeknownst to Plaintiff, the confidential information he provided on his loan application was intercepted by Defendant through its use of the LinkedIn Insight Tag, and simultaneously disclosed to LinkedIn Corporation. *Id.* This included private information related to Plaintiff's citizenship, housing status, and employment information. *Id.* Such disclosures were not made to provide Plaintiff with services, but rather, to bombard him with harassing targeted advertising. Such conduct is unlawful under both state and federal law.

Rather than cure its privacy violations, Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 13) ("MTD" or "Motion"). However, each argument raised by Defendant is without merit, and its Motion should be denied.

## ARGUMENT

### I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE AND FEDERAL WIRETAPPING CLAIMS

Defendant argues "Plaintiff has not alleged facts sufficient to establish standing" because he failed to allege the harm was concrete and particular to him, such that there is no subject matter jurisdiction. MTD at 4. That is wrong.

Under state and federal law, financial service providers—like Defendant—are prohibited from disclosing nonpublic personal information to third parties. 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq*. Courts have long recognized consumers who have had their private information disclosed have suffered concrete harms actionable under law. *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020) ("[the harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another.") (internal citations omitted); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted); *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1037 (S.D. Cal. July 27, 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responds that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. The Court agrees.").

Here, Plaintiff does not allege an injury stemming from a bare statutory violation. Rather, Plaintiff alleges in "May 2025, [he] applied for a LightStream unsecured loan through [Defendant's] Website. During the application process,

Defendant required Plaintiff to provide private information related to his citizenship, housing status, and employment information . . . . Unbeknownst to Plaintiff, Defendant disclosed his personally identifiable information ("PII") to LinkedIn—including communications that contained Plaintiff's confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA." Compl. ¶ 5. Such disclosures were made for the purposes of targeted advertising without Plaintiff's consent. Compl. ¶¶ 72–73. Plaintiff suffered a concrete injury from this disclosure, as it was an egregious violation of Plaintiff's privacy and Defendant's legal duties to protect such information from disclosure. *Id.*; *see Campbell*, 951 F.3d at 1117 (finding a legally cognizable privacy injury where plaintiffs alleged "Facebook identifies and collects the contents of users' individual private messages.").

Defendants' reliance on *Heiting v. FKA Distributing Co. LLC*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) is misguided, as the court held the plaintiff had standing three months later in *Heiting II*, once the plaintiff refined her allegations to include the date and type of information being collected. *Heiting v. FKA Distrib. Co. LLC*, 2025 WL 1430663 (C.D. Cal. May 15, 2025) ("*Heiting II*") (explaining the plaintiff cured the defective pleading by alleging "she visited the website on March 4, 2024 and that at the time she visited the website, Defendant operated the TikTok software, which 'collects information [device and browser information, geographic information, referral tracking, and URL tracking] automatically on everyone who visits the Website.'"). Defendant's reliance on *Kishani v. Royal Caribbean Cruises* is similarly misplaced because there, the plaintiff failed to allege the website collected *his* information. 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025). Here, like the plaintiff in *Heiting II*, Plaintiff specifically alleges when the interception occurred (May 2024), the specific type of information being intercepted (private information related to his citizenship, housing status, and employment information), and how Defendant collected and disclosed this legally protected private information to LinkedIn. Compl. ¶¶ 5–6, 32, 54–73, Figs. 1–21. Moreover,

Plaintiff specifically alleges he applied for a LightStream unsecured loan, and the Complaint details what information Defendant collects and discloses to LinkedIn when a consumer applies for the same type of loan. Compl. ¶¶ 54–73.

Defendant also contends that because Plaintiff does not allege he was signed in to his LinkedIn account, he cannot allege LinkedIn deanonymized his information. MTD at 6. Defendant misunderstands Plaintiff's allegations. Plaintiff specifically alleges "[w]hen a user who has signed in to LinkedIn (***even if the user subsequently logs out***) is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website[,]" therefore, so long as the browser and device are the same, as alleged here (Compl. ¶ 5), the interceptions occurred. Compl. ¶ 42 (emphasis added).

## II. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

The California long-arm statute, Cal. Civ. Proc. Code § 410.10, provides for personal jurisdiction to the maximum extent that the Fourteenth Amendment's Due Process Clause allows.[1] As it pertains to specific personal jurisdiction, both the Supreme Court and the Ninth Circuit have acknowledged the focus of the inquiry is "the relationship among the defendant, the forum, and the litigation." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025); *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) ("In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation") (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). The three-part test for specific jurisdiction is as follows:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of

[1] Plaintiff maintains this Court has specific personal jurisdiction over Defendant.

> conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin*, 135 F.4th at 750–51 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

Although Plaintiff bears the burden of satisfying the first two prongs of the test, upon doing so, it becomes Defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin*, 135 F.4th at 751 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Despite Defendant's claims to the contrary, this Court should elect to exercise personal jurisdiction over the Defendant for the reasons detailed herein.

**A. Defendant Purposefully Directed Its Conduct To The Forum State**

To prove the first prong of the specific personal jurisdiction test when a claim is based in tort which includes privacy and data use violations, the Ninth Circuit applies the purposeful direction test, requiring "the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751–52.

**1. <u>Defendant Committed An Intentional Act</u>**

Defendant's Brief does not contest there was an intentional act. Even if it did, courts recognize that purposefully embedding code on a consumer's device to collect and compile their personally identifiable information and financial information is an intentional act. *See* Compl. ¶¶ 72, 94, 97–99, 115, 129, 138–39, 141; *see also* *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025)

(finding the defendant's installation of the TikTok pixel was an intentional act); *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F. 3d 985, 1001 (9th Cir. 2019) (analogizing a Computer Fraud and Abuse Act allegation to digital "breaking and entering" and "trespass" (i.e. intentional acts)); *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649, 661–62 (N.D. Cal. 2020) (sending code to servers and accessing them without authorization); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2–8 (N.D. Cal. May 15, 2019) (wiretapping); *Bergstein v. Parmar*, 2014 WL 12586073 at *3–4 (C.D. Cal. June 23, 2014) (telephone conversations) s*ee generally Briskin*, 135 F.4th at 755–61 (same).

### 2. <u>Defendant Expressly Aimed Its Actions At California</u>

Defendant argues Plaintiff has failed to show it expressly aims its Website at California because Plaintiff's allegation that Defendant "promotes, markets, and operates its services to residence within this District and throughout California has nothing to do with his claim." MTD at 10 (internal citations and quotations omitted). That is wrong.

Defendant operates an interactive website because consumers "can exchange information with the host computer when the site is interactive" because consumers can apply for various financial services including credit cards and loans through Defendant's Website—here Plaintiff applied for a LightStream unsecured loan. Compl. ¶ 5; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). This interactive loan process required Plaintiff to fill out various sensitive details, and the Ninth Circuit has recognized "a higher degree of interactivity provides greater support for the exercise of specific jurisdiction." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 n.3 (9th Cir. 2023). The Ninth Circuit has examined when tortious conduct on a nationally accessible website is expressly aimed at a particular forum, explaining that while "maintenance of a passive website alone cannot satisfy the express aiming prong . . . operating even a passive website in

conjunction with 'something more' — conduct directly targeting the forum — is sufficient." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (defendant expressly aimed its conduct because it was "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state."). A defendant does "something more" when a defendant "specifically targeted" consumers in a state, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F. 3d 1007, 1020 (9th Cir. 2002), or when a defendant exploits the state market for its own commercial gain, *Mavrix Photo*, 647 F. 3d at 1229.

Here, Defendant did both. Defendant specifically targeted California consumers by promoting, marketing, and operating its services to California consumers, including Plaintiff. Compl. ¶8. Similarly, by offering "a variety of financial services to Californians, whom it knows to reside in the State based on address information that individuals must provide in order to open an account or apply for a financial product or service" which is how Defendant runs its business, Defendant exploits the California market for personal gain. Compl. ¶¶ 5–6. The Ninth Circuit provided further support for Plaintiff's position in *Thomas v. Papa John's Int'l, Inc*. 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) ("Because [defendant] operates an interactive 'website with national viewership and scope' that 'appeals to, and profits from, an audience in' California, we reject [defendant's argument that it did not expressly aim its conduct at California]").

Defendant tries to distinguish *Briskin* by suggesting the court's reasoning turned on the defendants profiting from selling consumer profiles. MTD at 9–10, n. 1. However, Defendant's argument misconstrues Plaintiff's allegations because Plaintiff alleges that both LinkedIn and Defendant profit from the intercepted consumer data. Compl. ¶¶ 33–53 (alleging LinkedIn profiting), ¶ 73 ("Defendant engages in this deceptive conduct for its own profit at the expense of its customers' privacy."). Defendant's reliance on *Massie v. General Motors Co.*, 2021 WL

2142728 (E.D. Cal. May 26, 2021) is similarly misplaced because the *Massie* court relied on the forum-specific market test in *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020), which the Ninth Circuit overruled in *Briskin. Briskin*, 135 F.4th at 757 ("*AMA*'s rationale requiring a 'forum-specific focus' or 'differential targeting,' as the concept has been more recently described, is incorrect, and we now overrule it").

### 3. <u>Defendant's Claim That It Did Not Know The Harm It Caused Was Likely To Be Suffered In California Is Without Merit</u>

Defendant claims it did not know Plaintiff would suffer the harm in California because "the only connection between [Defendant's] alleged conduct and California is Plaintiff's claim he is a California Resident." MTD at 12. That is wrong.

"The third prong of the 'purposeful direction' test asks whether the intentional acts caused harm that the defendant knows is likely to be suffered in the forum state*." Conohan v. Rad Power Bikes Inc*., 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 744 (9th Cir. 2013)). In *Conohan*, the court found this element easily satisfied because the plaintiff alleged the defendant "intentionally collected personal data from California visitors its Website without first obtaining their consent [and] [g]iven California's robust privacy protections, [the defendant] knew—or should have known—that its alleged actions would cause harm to California residents."

Here, Plaintiff's allegations parallel *Conohan* as Plaintiff alleges neither Defendant nor LinkedIn procured Plaintiff's prior consent, and Defendant as "a provider of financial products and services . . . to individuals throughout the United States, including in California . . . [who also] provides a variety of financial services to Californians, whom it knows to reside in the State based on address information that individuals must provide in order to open an account or apply for a financial product or service" Compl. ¶ 5.

**B. Plaintiff's Claims Arise From Or Relate To Defendant's Contacts Within The State**

Defendant argues, "[n]othing about Plaintiff's allegations relating to the data allegedly collected from the Website, or of [Defendant's] purported use of the LinkedIn Insight Tag on the Website, . . . have anything to do with [Defendant's] purported contacts with California." MTD at 13. That is wrong.

Defendant's contention rests on a narrow, causal approach that the Supreme Court has rejected. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 (2021) (rejecting the defendant's "demand for an exclusively causal test of connection," the court explained "[t]he first half of [the arising from or relating to] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing"). Indeed, in *Briskin*, the Ninth Circuit found the "arising from or relating to" prong easily satisfied because the "[the defendant's] installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries." *Briskin*, 135 F.4th at 760.

Here, Plaintiff's injuries arise from Defendant's contacts within the state because Defendant's installation of the LinkedIn Insight Tag onto Plaintiff's device occurred in California and the interception of the data is the kind of conduct resulting in the privacy injuries alleged. Compl. ¶¶ 5–8. Moreover, Defendant goes beyond merely allowing Californians to view the Website because Defendant also allows Californians to apply for and receive a variety of financial services on the Website, all while assisting third party LinkedIn with intercepting their sensitive and confidential information without consent. Compl. ¶¶ 5–8, 54–74, 112, 115, 130. By knowingly offering its services in California, Defendant "enjoys the benefits and protection of [California's] laws, i.e., enforcement of contracts, the defense of property, [and] the resulting formation of effective markets." *Ford Motor Co.*, 141 S. Ct. at 1029.

### C. Subjecting Defendant To Jurisdiction In California Is Not Unreasonable

Relying on the seven-factor reasonableness test employed by the Ninth Circuit,[2] Defendant contends all seven factors weigh in favor of the Court declining to exercise jurisdiction based on its own conclusory, baseless assertions.

*First*, Defendant's purposeful interjection, which parallels the purposeful direction analysis, supports a finding that this Court has specific jurisdiction for the reasons discussed previously. *Compare supra* Sec. II (A) *with* MTD at 14–15.

*Second*, while the burden on Defendant to litigate in California may be greater than, say, North Carolina, Defendant has "not presented evidence that the inconvenience is so great as to constitute a deprivation of due process, . . .[such that] this factor just barely weighs against the exercise of personal jurisdiction." *LyricFind, Inc. v. Musixmatch, S.p.A.*, 2025 WL 2537755, at *8 (N.D. Cal. Sept. 3, 2025) (citing *Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023)).

*Third*, Plaintiff's claims create a California subclass to enforce the rights of Californians—including Plaintiff—while maintaining a Nationwide class for Plaintiff's ECPA claims. Compl. ¶ 74. Indeed, Defendant cites to no North Carolina law conflicting with Plaintiff's claims, instead referring to its nonresident status as though it is dispositive (it is not).

*Fourth*, California has an interest in adjudicating the present matter because California has an interest in upholding the laws it enacted to protect Plaintiff and other Californians from the unlawful privacy and data practices of nonresident corporations—like Defendant—who knowingly violate California law (i.e. CIPA §

[2] The seven factors are "1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. " *LyricFind, Inc. v. Musixmatch*, 2025 WL 2537755, at *8 (N.D. Cal. Sept. 3, 2025) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)).

631, CIPA § 632, Cal. Fin. Code § 4050, and the California Constitution). Compl. ¶¶ 1–28, 106–146. Defendant cites no authority supporting its position that this forum does not have an interest in adjudicating this dispute.

*Fifth*, Defendant's claim that judicial efficiency weighs in its favor because questions and records from Defendant reside outside of California. But Plaintiff and his device, where the data interceptions occurred, reside in California. Compl. ¶ 5. And LinkedIn, the third party allegedly receiving the data, also resides in California. Courts have consistently held "efficient judicial resolution of the dispute—is no longer weighed heavily given the modern advances in communication and transportation" such that this factor is neutral. *LyricFind, Inc. v. Musixmatch, S.p.A.*, 2025 WL 2537755, at *9 (N.D. Cal. Sept. 3, 2025) (citing to *Silk*, 65 F.4th 445).

*Sixth,* as a resident and citizen of Los Angeles, California is the convenient forum for Plaintiff. Compl. ¶ 5. Defendant claims that "it is not unreasonably inconvenient" for Plaintiff to litigate outside of California because there exists some "relevant information, documents, and witnesses . . . located outside of California." But Defendant overlooks the principle of this factor, which is the convenience *to the Plaintiff*, not the convenience of other witnesses. MTD at 15–16.

*Seventh*, Defendant concludes that "there exists an alternative forum for the dispute based on Plaintiff's own allegations." Defendant overlooks that three of Plaintiff's claims brought on behalf of the proposed California subclass sound in California law. *See* Compl. ¶¶ 74, 106–146. Although there exists an alternative forum, "[n]o single factor is dispositive." *Silk*, 65 F.4th at 458 (quoting *Roth*, 942 F.2d at 623).

In sum, *Briskin* and *Thomas* dictate that the exercise of specific personal jurisdiction is reasonable here. *Briskin*, 135 F.4th at 755–61; *Thomas*, 2025 WL 1704437, at *1.

## III. PLAINTIFF'S CLAIMS ARE SUFFICIENT UNDER RULE 8

Defendant argues that Plaintiff's failure to allege the minutiae of how Defendant "improperly collect[s], disclose[s], and use[s]" Plaintiff's data and information is "fatal" to the entire Complaint, and dismissal is appropriate under Rule 8. MTD at 16–17. That is wrong. No such "minutiae" is required, and, in any event, Plaintiff's complaint contains sufficient detail.

The Federal Rules require that a complaint contain a "short and plain statement" of the facts showing that "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quotation omitted). A claim is "plausible" if the there is enough factual content to allow for "the reasonable inference that the defendant is liable." *Id.* Courts "must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 925 (C.D. Cal. 2025) (quotation omitted).

Here, Defendant attempts to label Plaintiff's Complaint as a shotgun pleading. But Plaintiff plainly and clearly states that Defendant utilized the LinkedIn Insight Tag to share its applicants' protected information. Compl. ¶¶ 3, 5, 55–57, 72–73. Plaintiff further provides both visual and descriptive allegations that elaborate on the type of information being disclosed. Compl. ¶¶ 58–68; Fig. 1–21. Plaintiff also details why the intercepted information is legally protected. Compl. ¶¶ 18–28. Defendant wrongly claims that the failure of Plaintiff to explain what "*did*" occur as opposed to what "*could*" occur is a "fatal" omission. MTD at 17. This is not what is required to state a plausible claim. *See*, *e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969 (C.D. Cal. 2023) ("Although Valenzuela has not alleged specifically that she used the chat feature . . . this is not fatal to her claim . . . [it] is a plausible inference from her allegations."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) ("Plaintiffs have properly alleged that Salesforce has the ability . . . the Court finds that Plaintiffs have alleged sufficient facts to meet the

plausibility requirement."); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024) ("These allegations, when accepted as true, support a plausible inference that Plaintiffs used the chat feature within the relevant statutory time period.").

This is especially applicable to wiretapping cases, where relevant information is often unreachable prior to discovery. *See D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("[A] pleading standard to the contrary would require the [wiretapping] plaintiff to engage in a one-sided guessing game because the relevant information . . . typically resides uniquely in the custody and control of . . . defendant and its third-party recorder."). Defendant has ample notice to satisfy Rule 8, and accepting Defendant's argument would require the Court to draw inferences against Plaintiff, which is not permitted.

## IV. PLAINTIFF SUFFICIENTLY PLEADS HIS WIRETAPPING CLAIMS

### A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues that Plaintiff's ECPA claim fails because the ECPA is a one-party consent statute and the crime-tort exception is inapplicable. MTD at 18–19. Not so.

Defendant is correct that the ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d). However, there is a crime-tort exception to the party exemption. *Id.* The exception is applicable when communication is intercepted "for the purpose of committing any criminal or tortious act." *Id.* The criminal or tortious "purpose" has been interpreted as being "the primary motivation or a determining factor in the interceptor's actions." *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (quotations omitted). In the Ninth Circuit, "the crime-tort exception may nonetheless apply" where a defendant is primarily motivated by monetary gain. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024); *see also R.S. v. Prime Healthcare Srvs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan.

13, 2025) ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA.").

Defendant claims, without any authority, that Plaintiff's allegations are "insufficient to show that Truist acted with the purpose of committing" a crime or tort. MTD at 19. To the contrary, Plaintiff describes with particularity how Defendant violated the GLBA, CalFIPA, and committed an invasion of privacy, via the secret installation of computer code on its website. Compl. ¶¶ 99–100. At this stage, Plaintiff plausibly alleges that Defendant acted with the requisite criminal or tortious intent. *See Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the party exemption did not apply when plaintiffs alleged that defendant intercepted contents "for an unauthorized purpose, which resulted in tortious acts"); *R.C.*, 733 F. Supp. 3d at 901–02 (finding that plaintiffs stated a claim for invasion of privacy sufficient to plead defendant's tortious intent).

Citing *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021), Defendant also argues that the primary purpose of its conduct was to "assist" its "marketing efforts," therefore "precluding application of the crime-tort exception." MTD at 19. This argument has been consistently critiqued and rejected. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *9 (N.D. Cal. July 18, 2025) ("[T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable."); *R.C.*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."). In sum, Defendant cannot shield itself from Plaintiff's ECPA claim by relying on the party exemption; the crime-tort exception squarely applies.

**B. Defendant's Conduct Was Intentional**

Defendant argues that Plaintiff fails to establish that "any interception or eavesdropping of Plaintiff's data by the LinkedIn Insight Tag was intentional." MTD at 20. That is wrong and defies common sense. Indeed, the very purpose of the LinkedIn Insight Tag is to intercept communications. Compl. ¶ 41; *see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1010 (N.D. Cal. 2024) (accepting plaintiffs' allegations that "the Pixel's design renders it primarily useful for electronic eavesdropping.").

Under the ECPA, "intent" may be demonstrated where an interception is "purposeful" and "deliberate," and not "a result of accident or mistake." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (internal citations omitted). Furthermore, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *Id.* The meaning of "intentionality" within CIPA is identical to the meaning within ECPA. *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *6 (N.D. Cal. Aug. 11, 2025); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (quotation omitted).

Here, Plaintiff has alleged in depth that Defendant intentionally intercepted Plaintiff's information because computer code does not get embedded on Defendant's website by accident. *See* Compl. ¶¶ 98–99, 138, 141. As the owner and operator of the Website, Plaintiff has established that "Defendant chose to embed the LinkedIn Insight Tag." *Id.* at ¶ 6. But even if Defendant did not originally intend to unlawfully intercept interception, Defendant failed to take remedial action after becoming aware of the defect. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 815. That is sufficient to show intent.

More importantly, the information unlawfully intercepted and disclosed by Defendant is protected by law. Therefore, as a financial institution, Defendant knew

that it was unlawful to disclose Plaintiff's protected information to third parties. *See Shah*, 768 F. Supp. 3d at 1053; *R.C.*, 733 F. Supp. 3d at 901–02.

**C. Plaintiff Never Consented To Defendant's Wiretapping**

Defendant alleges that Plaintiff's communications were not subject to "interception or eavesdropping" under the wiretap statutes because Plaintiff consented to the disclosure of his communications "pursuant to Truist's Privacy Policy." MTD at 20–21. That is incorrect because Defendant has failed to show how, if at all, Plaintiff was ever presented with its Privacy Policy, let alone that he affirmatively consented to it. That is intentional.

"In California, internet contracts are classified by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quotation omitted). A browsewrap agreement exists when "an internet user accepts a website's terms of use merely by browsing the site." *Id.* A clickwrap agreement requires "users to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Snyder v. G6 Hospitality LLC*, 2025 WL 2426613, at *3 (C.D. Cal. Aug. 18, 2025) (quotation omitted). Sign-in wrap—a "hybrid" of clickwrap and browsewrap—exists when "a website notifies the user of the existence of the website's terms of use and . . . advises that user that he or she is agreeing to the terms of service when registering or signing up." *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *10 (N.D. Cal. Oct. 19, 2020) (quoting *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020)). Courts have consistently held browsewrap agreements to be unenforceable and clickwrap agreements to be enforceable. *See Snyder*, 2025 WL 2426613, at *3. Absent a showing of actual notice, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously

manifests his or her assent to those terms." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024). Defendant establishes neither.

Defendant first argues, without any supporting authority, that no interception or eavesdropping occurred because Plaintiff "voluntarily applied for a loan on the Website." MTD at 20. Under that logic, no voluntary communication would ever be subject to interception or eavesdropping. This would defeat the purpose of a wiretap statute—protection against uninvited third-party listeners—and is belied by a bevy of caselaw. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation.").

Plaintiff alleges that he never provided consent to the disclosure of his confidential information, Compl. ¶ 27, yet Defendant claims that Plaintiff "agreed" to Truist's Privacy Policy. MTD at 20. However, no reference is made to Defendant's Privacy Policy in the Complaint. Defendant also failed to attach any exhibit or declaration regarding its Privacy Policy. As such, this argument is an improper basis for dismissal as Defendant relies on documents extraneous to the pleadings. Even if the Privacy Policy is to be considered, it does not help Defendant because Defendant tacitly admits its Privacy Policy is browsewrap. Browsewrap agreements are rarely found to be sufficient forms of notice. *See id.* ("*Through his use of the Website*, Plaintiff . . . agreed, pursuant to Truist's Privacy Policy . . .") (emphasis added); *Snyder*, 2025 WL 2426613, at *3. To the extent Defendant improperly argues on reply for the first time that Plaintiff was put inquiry notice of the Privacy Policy, that is also incorrect.

Defendant discusses what the Privacy Policy says but provides little to no information about whether the policy is reasonably conspicuous. *See Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) ("It is not sufficient to simply allege that the policies exist . . . to prove consent."). Regardless, Defendant provides no information showing that Plaintiff took some sort of action on

the Website that would "unambiguously manifest" his assent to the Privacy Policy. *Snyder*, 2025 WL 2426613, at *3.

**D. Defendant Intercepted The Contents Of Plaintiff's Communications**

Defendant asserts that "Plaintiff fail[ed] to allege that the LinkedIn Insight Tag . . . acted to intercept or eavesdrop the contents of his communications." MTD at 22. This is incorrect.

Courts interpret "content" under the CIPA and ECPA as "the intended message conveyed by the communication . . . not includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky*, 445 F. Supp. at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "how much information would be revealed by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5. Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *see Yoon*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."). Finally, derivative liability may still be imposed even if communication occurs directly between a plaintiff and alleged eavesdropper. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly.").

Here, Defendant takes issue with Plaintiff's allegations but provides no reason why the intercepted information is not "content." *See* MTD at 22 ("Here, Plaintiff fails to allege that the LinkedIn Insight Tag alleged in the Complaint acted to

intercept or eavesdrop the contents of his communications.”). Nor could Defendant credibly do so. Plaintiff's allegations describe the various button names disclosed to LinkedIn based on the user-generated responses within the Website. *See* Compl. ¶¶ 58–68. This content allows Defendant to discern Plaintiff's citizenship, employment status, loan information, and other nonpublic personal information. *Id.* This is “content.” *Shah*, 768 F.Supp.3d at 1054 (“In the complaint, Plaintiffs state that the ‘contents’ of their communication included Plaintiffs' personal information, which is a content under CIPA.”).

Defendant also argues that because “Plaintiff's browser was communicating directly with the purported eavesdroppers,” Plaintiff's theory of liability is foreclosed. MTD at 22. Even if Defendant's premises were to be accepted, the conclusion is still wrong. *See Revitch*, 2019 WL 5485330, at *2 (“But it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is not less an eavesdropper just because the sound waves from the next room to reach his ears directly.”); *see also Taylor*, 2025 WL 2308483, at *5 ([D]efendant's argument that it is a party to the conversation because the callers do not reach Domino's is unavailing.”).

### E. Defendant's Interceptions Occurred While Plaintiff's Communications Were “In Transit”

Separately, Defendant claims that no interception or eavesdropping occurred because disclosures did not occur until “***after*** information is submitted on the Website.” MTD at 21 (emphasis in original). However, Defendant mischaracterizes Plaintiff's allegations. Under the ECPA and CIPA, “interception[]” of contents “must occur during . . . transmission, not when the communication is in electronic storage.” *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023). On a motion to dismiss, Plaintiff's allegations that Defendant intercepts communications in real-time are to be taken as true. *Id.* (“Defendant argues that Plaintiff's allegations

are conclusory and require more factual support. Not so."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same); *Taylor*, 2025 WL 2308483, at *5 (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (same).

Defendant claims Plaintiff's allegation that "Defendant facilitated LinkedIn's simultaneous eavesdropping" is "conclusory." MTD at 21; Compl. ¶ 139. This argument overstates the legal standard of what is required at the pleading stage. *See, e.g.*, *Licea*, 669 F. Supp. 3d at 946; *Byars*, 654 F. Supp. at 1027. Indeed, Plaintiff goes to great lengths to explain how the LinkedIn Insight Tag is used to intercept communications in real time. Compl. ¶¶ 40-42. Defendant also argues that Plaintiff admits the interception did not occur "in real time" because Plaintiff uses the word "after" in describing how the alleged interception occurs. MTD at 22. For instance, Plaintiff alleges that "Defendant discloses" the type of loan sought by applicants to LinkedIn "[a]fter a consumer clicks" a button. Compl. ¶ 60. However, the use of "after" in this manner coexists with the "in real-time" requirement, as the "content" of the communication cannot be transmitted until after it is communicated. The only plausible inference from Plaintiff's choice of words is that interception occurred "during transmission." Courts have found similar allegations to satisfy the "in transit" requirement. *See Licea*, 669 F. Supp. 3d at 946; *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *Shah*, 768 F.Supp.3d at 1053-54 (same). Thus, Plaintiff has sufficiently alleged the second clause of Section 631.

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

To state a claim for invasion of privacy under the California Constitution, plaintiffs must plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an

egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted). Defendant argues that Plaintiff has failed to establish each of these three elements. That is wrong.

Plaintiff has made numerous allegations of the specific personal data at issue. Plaintiff has a cognizable privacy interest in this data because it reveals highly personal information about Plaintiff including, *inter alia*, (1) who Plaintiff is, (2) the fact that Plaintiff is seeking a loan, (3) the purpose of the loan, (4) whether Plaintiff is employed, and (5) Plaintiff's citizenship. *See* Compl. ¶¶ 58–68. This is precisely the type of information people possess a reasonable expectation of privacy over. Moreover, it is not "routine commercial behavior" to disclose such information. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022).

The contents intercepted are legally protected, as well. This protection helps form Plaintiff's expectation of privacy in his financial decisions. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 *et seq.* (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer).

Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as the likelihood of serious harm to the victim , the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *Id.* A true holistic consideration in this case should lead to the determination that Plaintiff's data constitutes an egregious breach. Defendant cites numerous cases dealing with personal information not relevant to Plaintiff's claims. *See* MTD at 24 (stating that disclosure of stolen social security numbers, routine medical searches, device identifiers, personal data, and geolocation have been held as not highly offensive). Here, contemporary "social norms" are far more likely to render the

disclosure of citizenship information, for instance, as being highly offensive. *See Hammerling*, 615 F. Supp. 3d at 1090.

Defendant's motion is replete with essentially the same argument: that Plaintiff has made "generalized" allegations based on a "hypothetical user's use of the Website." MTD at 25. Defendant again assumes a different legal standard than what is required. As cited throughout, allegations similar to Plaintiff's are routinely held sufficient to state a claim in this Circuit.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion in its entirety. If, however, the Court dismisses any part of the Complaint, Plaintiff respectfully requests leave to amend to cure any such deficiencies. *See, e.g.*, *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

Dated: September 12, 2025

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*