Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

Tayler G. Bragg (admitted *pro hac vice*)
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Attorneys for Defendant*
TRUIST FINANCIAL CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRIS GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TRUIST FINANCIAL CORPORATION,

Defendant.

Case No. 2:25-cv-05753-MEMF-PVC

Assigned to:
Hon. Maame Ewusi-Mensah Frimpong

**DEFENDANT TRUIST FINANCIAL CORPORATION'S REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE**

Date: November 20, 2025
Time: 10:00 a.m.
Place: Courtroom 8B, 8th Floor

Action Filed: June 24, 2025
Trial Date: Not set

# TABLE OF CONTENTS

**Page No.**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff's Opposition Fails to Show He Established Standing. .......... 2

B. Plaintiff Fails to Establish Personal Jurisdiction. .......... 4

1. Truist Did Not Purposefully Direct Its Conduct at California. .......... 4

2. Plaintiff's Claims Do Not Arise from or Relate to Truist's California Conduct. .......... 9

3. Exercising Jurisdiction Would Be Unreasonable and Unfair. .......... 10

C. Plaintiff's Allegations Are Insufficient Under Rule 8. .......... 11

D. Plaintiff's Complaint Fails to State a Claim Under Rule 12(b)(6). .......... 12

1. The ECPA Claim (Count I) Should Be Dismissed for Failure to Plead Facts Sufficient to Apply the Crime-Tort Exception. .......... 12

2. The Wiretap Claims (Counts I–III) Should Be Dismissed for Failure to Plead the Elements of the Claims. .......... 14

3. The Constitutional Claim (Count IV) Should Be Dismissed for Failure to Plead a Highly Offensive Intrusion. .......... 16

III. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 7

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 7, 9, 10

*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-CV-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025) .......... 15

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......... 5

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 12, 16

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 15

*Doe v. Amgen Inc.*,
No. 2:23-cv-07448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) .......... 16

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1249 (N.D. Cal. 2024) .......... 7

*Earlywine v. USAA Life Ins. Co.*,
No. 3:17-CV-328, 2017 WL 4541743 (S.D. Cal. Oct. 11, 2017) .......... 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 9

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-CV-06099, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16

*Heiting v. FKA Distrib. Co. LLC*,
No. 2:24-CV-07314, 2025 WL 1430663 (C.D. Cal. May 15, 2025) .................... 3

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)......................... 2

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)........................................................................ 5, 6

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)................... 15

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)............................................................ 14

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024)............................ 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012).......................................................... 16

*LyricFind, Inc. v. Musixmatch, S.p.A.*,
No. 25-CV-02265, 2025 WL 2537755 (N.D. Cal. Sept. 3, 2025) ..................... 11

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ........................... 7

*Massie v. General Motors Co.*,
No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ..................... 8

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)............................................................................ 6

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ................................................................ 7

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022)................................................................ 8

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)........................................................................... 11

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025)...................................... 3

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ........ 5, 6

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 13

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 14

*Rounds v. Case-Mate Inc.*,
No. 2:24-CV-08531, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ........ 7, 10

*Sacco v. Mouseflow, Inc.*,
No. 2:20-CV-02330, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ........ 8

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 2

*Steshenko v. Bd. of Trs. of Foothill-De Anza Cmty. Coll. Dist.*,
No. 24-CV-06126, 2025 WL 1069940 (N.D. Cal. Apr. 8, 2025) ........ 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........ 4

*Thomas v. Papa John's Int'l, Inc.*,
No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ........ 6, 7

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22-CV-2012, 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023),
*aff'd sub nom. Thomas v. Papa John's Int'l, Inc.*, No. 24-3557,
2025 WL 1704437 (9th Cir. June 18, 2025) ........ 6, 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 2

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 15

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 9, 11

**Statutes & Rules**

18 U.S.C. § 2511(2)(d) ........ *passim*

Cal. Penal Code § 631 ........ 14

Cal. Penal Code § 632 ........ 14

Fed. R. Civ. P. 8 ........ 1, 11, 12

Fed. R. Civ. P. 12(b)(1) ........ 1

Fed. R. Civ. P. 12(b)(6) ........ 12

Defendant Truist Financial Corporation ("Truist" or "Defendant") respectfully submits this Reply in Support of its Motion to Dismiss, Dkt. 13 (the "Motion") Plaintiff's Class Action Complaint (the "Complaint"), which responds to Plaintiff's Opposition to Defendant's Motion, Dkt. 18 (the "Opposition").

## I. INTRODUCTION

Plaintiff's Opposition confirms the fundamental flaws in his Complaint. In response to Truist's arguments showing that he had failed to allege facts demonstrating improper disclosure of ***his own*** data—rather than a ***hypothetical*** user's data—Plaintiff points to allegations including screenshots from the Website.[1] But these screenshots confirm the Complaint's failure to plead an injury under Rules 8 and 12(b)(1), as they purport to show how the LinkedIn Insight Tag ***might*** disclose data, but not the data that ***Plaintiff*** allegedly disclosed, and how ***that*** data was disclosed from the Website.

Plaintiff's response to Truist's personal jurisdiction arguments is equally unavailing. Plaintiff concedes that there is no general jurisdiction over Truist, but argues that the Court can exercise specific jurisdiction because Truist purportedly aimed its alleged conduct expressly at California. But Plaintiff's Opposition ignores the caselaw consistently rejecting these arguments, and Plaintiff's reliance on cases involving targeted sales, advertising, or individualized contacts only highlights the lack of analogous allegations here. Plaintiff's jurisdictional theory boils down to his own unilateral act of visiting Truist's Website, which is an approach the Supreme Court has squarely rejected.

Setting aside these threshold issues, Plaintiff's Opposition does little to show that he has adequately alleged the elements of any of his claims. As to Plaintiff's Wiretap Claims, Plaintiff concedes that the ECPA is a one-party consent statute and that Plaintiff's own allegations show that Truist consented to the purported interception by the LinkedIn Insight Tag. Plaintiff insists that the Court apply the

[1] Capitalized terms not defined in the Reply have the meanings provided in the Motion.

crime-tort exception to the ECPA, but his allegations relating to that exception are conclusory and unsupported by factual allegations. And Plaintiff's Opposition is unable to sidestep the fact that the CIPA claims fail because Plaintiff's allegations do not show a wiretap. By Plaintiff's own allegations, the purported disclosure to LinkedIn occurred separate from, and after, that information was submitted on the Website. Learning the content of a communication after it has been sent, or via a separate communication, is not "eavesdropping" as a matter of law. Plaintiff ignores Truist's cited authorities and instead asks the Court to rewrite his Complaint. But Plaintiff is bound by his allegations, which foreclose his claims.

Finally, Plaintiff's constitutional claim rests on generalized, speculative assertions of harm that fall far short of pleading a "highly offensive" intrusion.

For these reasons, as set forth in greater detail below, Plaintiff's Complaint is fatally flawed. The Court should dismiss the Complaint in its entirety.

## II. ARGUMENT

### A. Plaintiff's Opposition Fails to Show He Established Standing.

Plaintiff's Opposition confirms that the Court lacks subject matter jurisdiction. Plaintiff still cannot point to any allegations about what information Plaintiff actually provided on Truist's Website, whether LinkedIn actually received any information about Plaintiff, whether Plaintiff was aware of the LinkedIn Insight Tag, or if Plaintiff has any facts demonstrating that his data was indeed de-anonymized by LinkedIn. Mot. at 4–6; *see Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (explaining a plaintiff must have an injury in fact that is concrete, i.e., "real" and not "abstract," and particularized, i.e., "affect[s] the plaintiff in a personal and individual way").

Plaintiff notably does not cite the new Ninth Circuit authority on standing in similar cases. *See Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824 (9th Cir.

Aug. 26, 2025). The Ninth Circuit ruled that, because Supreme Court precedent "contemplates a standing inquiry ***particularized to a plaintiff's circumstances*** and benchmarked to a specific tort, [the plaintiff] ha[d] not met her burden to demonstrate that she ha[d] standing." *Id.* at *5 (emphasis added). The court explained, while "the complaint identifie[d] potential harms that *might* be associated with session-replay technology . . . the complaint include[d] no allegations plausibly linking these potential, generalized harms to the operation of [the session-replay technology] on [the defendant's] website vis-à-vis [the plaintiff]." *Id.* at *5 n.5.

Plaintiff also does not cite a case in which a court found standing under circumstances similar to this case. *See* Opp. at 2–4. Plaintiff cites a handful of cases where courts found that other plaintiffs sufficiently alleged standing, *see* Opp. at 2, but Plaintiff's citations to those cases sidestep the fact that Plaintiff here fails to allege anything more than a hypothetical dispute. This is highlighted in one of the cases that Plaintiff cites. *See* Opp. at 2 (citing *Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025)). There, the court found allegations of injury sufficient when, among other allegations, the plaintiff alleged that the "disclosures led to him receiving targeted advertisements related to the very conditions he had searched the [w]ebsite." *Gaige*, 2025 WL 559719, at *2. By contrast, Plaintiff here has not alleged any facts to indicate that his data was disclosed or de-anonymized.

Plaintiff's reliance on *Heiting II* further illustrates the flaws in his Complaint. *See* Opp. at 3 (citing *Heiting v. FKA Distrib. Co. LLC*, No. 2:24-CV-07314, 2025 WL 1430663 (C.D. Cal. May 15, 2025) (*Heiting II*)). First, while that plaintiff alleged the specific month, day, and year when she visited the website at issue, *id.* at *2, the Complaint here lacks even that information: Plaintiff alleges that he visited the Website "[o]n or around May 2025," Compl. ¶ 5.[2] Second, while Plaintiff argues that

[2] Plaintiff contradicts his allegations by arguing in the Opposition that the "interception occurred" in "May 2024," Opp at 3. Truist assumes this was a typographical error.

he alleges "the specific type of information being intercepted (private information related to his citizenship, housing status, and employment information)," Opp. at 3, Plaintiff does not allege what information he actually provided or what information Truist allegedly disclosed. *Cf.* Compl. ¶ 5. Third, while Plaintiff claims that he alleges "how Defendant collected and disclosed this legally protected private information to LinkedIn," Opp. at 3, Plaintiff actually relies only on screenshots about a hypothetical user's use of the Website, not about Plaintiff's actual experience using the Website. *See, e.g.*, Compl. ¶¶ 58–68.

For these reasons and those explained in the Motion, the Court should dismiss the Complaint for lack of standing.

### B. Plaintiff Fails to Establish Personal Jurisdiction.[3]

#### 1. Truist Did Not Purposefully Direct Its Conduct at California.

##### a. Truist's Alleged Acts Were Not "Expressly Aimed" at California.

In its Motion, Truist explained that operating a passive or interactive website, without more, is not enough to establish specific jurisdiction. *See* Mot. at 9 (citing *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023)). Indeed, "operation of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process." *Herbal Brands*, 72 F.4th at 1091–92.

[3] Truist argued in the Motion that California lacks general jurisdiction because Truist is incorporated in North Carolina and has its principal place of business in North Carolina, and Truist's contacts are not so continuous and systematic as to render Defendant essentially at home in California. Mot. at 7–8. Plaintiff did not address general jurisdiction in his Opposition, *see* Opp. at 4–11, and states in a footnote, "Plaintiff maintains this Court has specific personal jurisdiction over Defendant," Opp. at 4 n.1. Thus, Plaintiff has conceded that no general jurisdiction exists. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

In his Opposition, Plaintiff concedes that "something more" than a passive website is required to establish specific personal jurisdiction. Opp. at 6–7. But the cases Plaintiff cites where courts found "something more," discussed briefly below, are nothing like the facts alleged here. *See* Opp. at 6–8 (citing *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025); *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)).

In *Herbal Brands*, the court held that "the sales of *physical products* into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum" and only when "two key elements are present." 72 F.4th at 1094 (emphasis added). Here, Plaintiff's allegations are about accessing the Website to apply for a loan, Compl. ¶ 8, not about "the sales of physical products," 72 F.4th at 1094, so *Herbal Brands* does not support a finding of specific jurisdiction.

In *CollegeSource*, the court found express aiming where the "plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." 653 F.3d at 1077 (internal quotation marks omitted). Here, Plaintiff does not allege that Truist individually targeted Plaintiff, so *CollegeSource* does not support a finding of specific jurisdiction.

In *Rio Properties*, a plaintiff sufficiently alleged that the defendant "engaged in 'something more' than the operation of a passive website" when it alleged that the defendant "specifically targeted consumers in Nevada by running radio and print advertisements in Las Vegas," and attached one of the print advertisements to the complaint. 284 F.3d at 1020–21 (internal quotation marks omitted). Here, Plaintiff makes no such allegations and instead generally alleges only that Truist "promot[es],

market[s], and operat[es] [] its services to residents within this District and throughout California," Compl. ¶ 8. Thus, *Rio Properties* does not support a finding of specific jurisdiction.

In *Mavrix Photo*, the court explained that when "a website with national viewership and scope appeals to, and profits from, an audience in a *particular* state, the site's operators can be said to have 'expressly aimed' at that state." 647 F.3d at 1231 (emphasis added). There, the defendant "operated a very popular website" called celebrity-gossip.net which had "a specific focus on the California-centered celebrity and entertainment industries," and a "substantial number of hits to [the] website came from California residents," in part because "some of the third-party advertisers on [the] website had advertisements directed to Californians." *Id.* at 1230–31. Those facts are in stark contrast to those alleged in the Complaint about a national Website that does not specifically target California. *See, e.g.*, Compl. ¶ 6 ("Defendant is a provider of financial products and services . . . to individuals throughout the United States, including in California."). Thus, *Mavrix Photo* does not support a finding of specific jurisdiction.

In *Papa John's*, the Ninth Circuit issued a Memorandum with one sentence about the "express aiming" prong. In that sentence, the court rejected the argument that Papa John's did not expressly aim its conduct at California when the pizza chain operated an interactive website that appealed to and profited from an audience in California. 2025 WL 1704437, at *1. The district court's order confirms that this case does not support Plaintiff's argument. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22-CV-2012, 2023 WL 6370641, at *4 (S.D. Cal. Aug. 14, 2023), *aff'd sub nom. Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). The district court relied on *Herbal Brands* to find that the pizza chain, which operated 130 retail stores in California, had "expressly aimed" its conduct at California when it "sold pizza and other items to [p]laintiff and other California residents" and exercised control over the distribution of pizza to consumers. *Id.* Here, Plaintiff's

allegations are about accessing the Website to apply for a loan, Compl. ¶ 8, not about selling physical products through over a hundred retail stores. Thus, *Papa John's* does not support a finding of specific jurisdiction.

Lastly, Truist explained in the Motion why *Briskin* is irrelevant. *See* Mot. at 9 n.1. In short, the *Briskin* court found that Shopify's alleged tortious conduct deliberately targeted the plaintiff in California where Shopify's business model was predicated on monetizing third-party data collected with its *own* software, and Shopify was alleged to have permanently installed tracking tools on California consumer devices. 135 F.4th at 746, 755–56. Plaintiff's only response is that "both LinkedIn and Defendant profit from the intercepted consumer data." Opp. at 7. But Plaintiff cites no case to suggest that mere profiting could constitute "something more" than a website to establish specific personal jurisdiction, nor could he. *See, e.g.*, *Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025) (rejecting argument that "the mere sale and shipment of goods to California" based on consumer's choice to purchase goods from defendant suggested "that Defendant's contacts with California are its *own* choice and not random, isolated, or fortuitous") (internal quotation marks omitted). For these reasons and those explained in the Motion, *Briskin* does not support a finding of specific jurisdiction.

In its Motion, Truist cited a number of analogous cases to support its argument that the "express aiming" prong has not been met. *See* Mot. at 9–12. Plaintiff ignored the vast majority of these[4] and instead claimed that *Briskin* overturned one case that Truist cited. *See* Mot. at 11 (citing *Massie v. General Motors Co.*, No. 1:20-cv-01560,

[4] *See* Mot. at 9–12 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021); *Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025); *Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1249, 1264 (N.D. Cal. 2024); *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259, 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023); *Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 948 (C.D. Cal. 2022); *Sacco v. Mouseflow, Inc.*, No. 2:20-CV-02330, 2022 WL 4663361, at *4–5 (E.D. Cal. Sept. 30, 2022); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021)).

2021 WL 2142728, at *1, *4–5 (E.D. Cal. May 26, 2021)); Opp. at 7–8. This is simply incorrect. *Massie* remains a useful comparison point here because the court analyzed the "level of interactivity and commercial nature of the exchange" on the national website at issue. 2021 WL 2142728, at *4. This is similar to the analysis in each of the cases on which Plaintiff relies. *See* Opp. at 6–8.

**b. Truist's Alleged Acts Did Not Cause Harm that Truist Knew Was Likely to be Suffered in California.**

Truist explained in the Motion that the only connection between Truist's alleged conduct and California is Plaintiff's claim that he is a California resident, so even assuming that Plaintiff could show any harm in the first instance (and he cannot), Plaintiff cannot show that Truist knew harm was likely to be suffered by him in California. Mot. at 12. In response, Plaintiff relies on one case that is inapposite. *See* Opp. at 8 (citing *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025)). There, the plaintiff alleged that a retailer who sold power bikes directed its activities to California by regularly engaging with California residents through its website and brick and mortar retail stores, almost half of which were located in California. *Id.* at *2–3. On those facts, the magistrate judge found that it was foreseeable that California residents would be harmed. *Id.* at *4.

By contrast, Plaintiff admits that Truist "is a provider of financial products and services . . . to individuals throughout the United States, including in California," Compl. ¶ 6; *see* Opp. at 8. Plaintiff does not allege anything about Truist's California brick and mortar retail locations, and even if Plaintiff did, they would not be relevant to Plaintiff's allegation that he applied for a loan through the Website, Compl. ¶ 5. Plaintiff also does not allege that the LinkedIn Insight Tag functions differently based on a Website visitor's location in California or that any alleged disclosure would differ based on whether the visitor accessed the Website in California or other locations nationwide. *See generally* Compl. The Supreme Court has made clear that

"[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Because Truist's alleged conduct is location-neutral, Plaintiff cannot show that Truist knew harm was likely to be suffered in California.

**2. Plaintiff's Claims Do Not Arise from or Relate to Truist's California Conduct.**

Truist established in the Motion that Plaintiff had not alleged any facts showing that his purported injury arose out of or related to Truist's alleged contacts in California. *See* Mot. at 13–14. First, Truist showed that Plaintiff, on his own, chose to visit the Website, so his claim does not "arise out of contacts that [Truist] create[d] with the forum State." *Walden*, 571 U.S. at 284. Second, Truist showed that nothing about Plaintiff's allegations relating to the data allegedly collected from the Website, or of Truist's purported use of the LinkedIn Insight Tag on the Website, is alleged to have anything to do with Truist's purported contacts with California.

Plaintiff counters by citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) and *Briskin*, but his cursory analysis misstates both law and facts. Opp. at 9. Plaintiff correctly notes that, under *Ford Motor Co.*, the Supreme Court denied the argument that jurisdiction rises or falls on a strict causation argument. *See* Opp. at 9 (citing *Ford Motor Co.*, 592 U.S. at 366). But Truist did not argue otherwise. And *Briskin* simply applies *Ford*, holding that jurisdiction existed under either the "arises" or "relates to" standard because Shopify intentionally installed software on devices that it knew were in California, and because Briskin alleged the type of injury "that would 'tend to be caused' by Shopify's contacts with California merchants and consumers." *Briskin*, 135 F.4th at 760.

But Plaintiff's allegations relating to Truist are nothing like those directed at Shopify. Shopify deliberately installed software on devices that it knew were in California; Plaintiff does not allege that Truist directly interacted with or targeted Plaintiff's device. Plaintiff argues that Truist's contacts with California are the same

as Shopify's and that "Defendant's installation of the LinkedIn Insight Tag onto Plaintiff's device occurred in California." Opp. at 9. But the Complaint alleges no facts stating that *Truist* installed *anything* on Plaintiff's device, and this assertion in the Opposition cites four paragraphs that do not contain such allegation. *Id.* (citing Compl. ¶¶ 5–8). New allegations raised in the Opposition do not suffice to meet *Ford*'s "arises out of or relates to" standard to confer specific jurisdiction.

Plaintiff's remaining arguments also lack merit. Plaintiff argues that Truist "allows Californians to apply for and receive a variety of financial services on the Website, all while assisting LinkedIn with intercepting their sensitive and confidential information without consent." Opp. at 9. Thus, Plaintiff essentially argues that "his privacy injury would never have occurred had the Website not been available to him in California," *Rounds*, 2025 WL 1873999, at *7, which is an argument that a court in this District already found was "far too reductive," *id.* Plaintiff did not bother to address *Rounds* in his Opposition. The same reasoning from *Rounds* should apply here, and the Court should find that Plaintiff's alleged harm does not arise out of or relate to Truist's California conduct.

**3. Exercising Jurisdiction Would Be Unreasonable and Unfair.**

In its Motion, Truist made a detailed, fact-based showing that California jurisdiction would be unfair and unreasonable. Mot. at 14–16. In response, Plaintiff concedes that both the burden on Truist of defending this case in California and the existence of an alternative forum outside California weigh against exercising jurisdiction. Opp. at 10–11. Plaintiff's remaining arguments in favor of jurisdiction are flawed and undercut by the primary case on which Plaintiff relies and Supreme Court precedent. *See* Opp. at 10–11 (citing *LyricFind, Inc. v. Musixmatch, S.p.A.*, No. 25-CV-02265, 2025 WL 2537755, at *8–9 (N.D. Cal. Sept. 3, 2025)). Plaintiff's main arguments for the Court to exercise jurisdiction are that California is convenient for Plaintiff and non-party LinkedIn. Opp. at 10–11. But Plaintiff does not admit that "the plaintiff's convenience is ***not*** of paramount importance." *LyricFind*, 2025 WL

2537755, at *9 (emphasis added). Moreover, while Plaintiff now argues that California is the appropriate forum because LinkedIn, a non-party, resides in California, *see* Opp. at 11, Plaintiff's Complaint says nothing about LinkedIn's residence, and Plaintiff cannot supplement jurisdictional allegations in an opposition brief. *See Steshenko v. Bd. of Trs. of Foothill-De Anza Cmty. Coll. Dist.*, No. 24-CV-06126, 2025 WL 1069940, at *9 (N.D. Cal. Apr. 8, 2025) ("Plaintiff cannot supplement deficient allegations of his complaint with new facts set forth in his opposition brief."). And even if Plaintiff's Complaint contained such allegations, "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284.

For these reasons and those explained in the Motion, the Court should dismiss for lack of personal jurisdiction.[5]

### C. Plaintiff's Allegations Are Insufficient Under Rule 8.

Truist demonstrated in the Motion that Plaintiff "fails to allege that his own data—rather than theoretical or aggregated data—was improperly collected, disclosed, and used." Mot. at 16. Plaintiff's response to that argument is to misrepresent it. *See* Opp. at 12. Plaintiff recasts Truist's argument as a "failure to allege the minutiae of how" Truist improperly collected, disclosed, and used Plaintiff's data. *Id.* Plaintiff even goes so far as to quote minutiae as if it is a term that Truist used in its Motion. Opp. at 12 ("No such 'minutiae' is required, and, in any event, Plaintiff's complaint contains sufficient detail."). It is not. Plaintiff's attempted redirection speaks volumes. Plaintiff still cannot point to a single allegation that his own data was improperly collected, disclosed, or used. In response, Plaintiff cites 29 allegations, Opp. at 12 (citing Compl. ¶¶ 3, 5, 18–28, 55–68, 72–73), only ***one*** of

[5] Plaintiff has not requested, and should not receive, jurisdictional discovery. *See, e.g.*, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery.").

which has anything to do with Plaintiff. ***And Plaintiff admits that he alleges what could occur as opposed to what did occur.*** Opp. at 12. That is enough to dismiss the Complaint. *See* Mot. at 16–17 (citing *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24 (S.D. Cal. 2023) ("Plaintiffs fail to factually explain their personal participation in any of this. Plaintiffs also lump together a variety of alleged activity . . . with no meaningful factual support as to what activities each Plaintiff engaged in on [the] website and what information each Plaintiff provided . . . . While Plaintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta.")).

For these reasons and those explained in the Motion, Plaintiff's entire Complaint should be dismissed under Rule 8.

**D. Plaintiff's Complaint Fails to State a Claim Under Rule 12(b)(6).**

**1. The ECPA Claim (Count I) Should Be Dismissed for Failure to Plead Facts Sufficient to Apply the Crime-Tort Exception.**

Truist explained in the Motion that the ECPA claim should be dismissed because it is a one-party consent statute, and Plaintiff's own allegations show that Truist consented to the purported interception by the LinkedIn Insight Tag. Mot. at 18–19. In response, Plaintiff concedes both points but argues that the crime-tort exception applies. Opp. at 13. But the crime-tort exception does not apply because Plaintiff has failed to plausibly allege that Truist intended to commit a crime or tort, let alone that "the ***primary motivation*** or a ***determining*** factor in [Truist's] actions has been to injure plaintiffs tortiously." Mot. at 19–20 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (emphasis added)).

Plaintiff argues that the exception applies because he "describes with particularity how Defendant violated the GLBA, CalFIPA, and committed an invasion of privacy, via the secret installation of computer code on its website." Opp. at 14 (citing Compl. ¶¶ 99–100). Not so. Plaintiff alleges in a conclusory manner that

Truist violated the GLBA and CalFIPA. *See* Compl. ¶¶ 99–100. Despite Truist raising these issues in the Motion, Mot. at 19, Plaintiff does not explain which provisions of the GLBA or CalFIPA that Truist allegedly violated or explain how Truist purportedly committed those crimes. *See* Opp. at 13–14. Plaintiff merely alleges that Truist's conduct "flouts the GLBA's and CalFIPA's respective purposes," Compl. ¶ 28, but flouting the purpose of a law is not the same as violating it, especially where any allegations that this was Truist's purported purpose are absent. Thus, Plaintiff cannot show that the alleged interception was "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

Plaintiff also asserts that the crime-tort exception may apply when a defendant is primarily motivated by monetary gain. Opp. at 13; *see* Opp. at 14. But courts in this Circuit disagree on that issue, and the more persuasive view is that, given the penal nature of the ECPA and the fact that it requires intentionality, a court should consider whether the ***primary*** purpose is criminal or tortious, in which case financial motivation alone does not trigger the crime-tort exception. *See Roe v. Amgen Inc.*, No. 2:23-CV-07448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (dismissing plaintiffs' ECPA claim under the one-party consent provision against a website operator alleged to have embedded tracking pixels to disclose plaintiffs' confidential medical information for targeted advertising, reasoning that the "crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"); *Katz-Lacabe*, 668 F. Supp. 3d at 945 ("Plaintiffs' attempt to invoke the crime-tort exception, requiring them to plead sufficient facts to show that the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously, does not apply to a case such as this, where Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money. As a result, Plaintiffs' Wiretap Act claim must be dismissed on this basis[.]") (internal quotation marks and citation omitted).

For these reasons and those explained in the Motion, Plaintiff's attempt to invoke the crime-tort exception fails, and the ECPA claim should be dismissed.

**2. The Wiretap Claims (Counts I–III) Should Be Dismissed for Failure to Plead the Elements of the Claims.**

Plaintiff fails to adequately rebut Truist's arguments that the Complaint fails to plead the elements of a violation under the ECPA or Sections 631 or 632 of CIPA.

<u>Interception/Eavesdropping</u>. First, Truist argued in the Motion that Plaintiff cannot plausibly allege that any of his information was "intercepted" when he voluntarily applied for a loan on the Website even though "Defendant required Plaintiff to provide information related to his citizenship, housing status, and employment information," Mot. at 20 (citing Compl. ¶ 5), and through Plaintiff's use of the Website, he agreed to Truist's Privacy Policy. In response, Plaintiff argues that this argument "is belied by a bevy of caselaw," but cites just one case that does not support Plaintiff's argument. Opp. at 17 (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (finding a participant to the conversation could not eavesdrop because he was not listening secretly)).

Second, and separately, Truist argued in the Motion that Plaintiff failed to allege that the purported disclosure to LinkedIn constituted eavesdropping under CIPA because learning the content of a communication ***after*** it has been sent is not eavesdropping. Mot. at 21–22. Critically, based on Plaintiff's own allegations, the alleged disclosure to LinkedIn occurs separate from, and after, that information is submitted on the Website. *See id.* (citing Compl. ¶¶ 60, 61, 63, 65, 66 (referencing disclosures ***after*** information is submitted on the Website)). Truist cited two recent cases that foreclose Plaintiff's CIPA claims in nearly identical circumstances. *See* Mot. at 21–22 (citing *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025); *Cole v. Quest Diagnostics, Inc.*, No. 2:23-CV-20647, 2025 WL 88703, at *2–3 (D.N.J. Jan. 14, 2025)). In his Opposition, Plaintiff does not address either of these cases. *See* Opp. at 19–20. Instead, Plaintiff

claims that the "only plausible inference" from Plaintiff's repeated use of "***after***" is that he actually meant "in real time." Opp. at 20. But such words do not have similar meanings, and Plaintiff "is bound by the allegations in the [complaint]." *Earlywine v. USAA Life Ins. Co.*, No. 3:17-CV-328, 2017 WL 4541743, at *3 (S.D. Cal. Oct. 11, 2017). Moreover, since Truist filed its Motion, yet another court has dismissed CIPA claims on this basis. *See Crano v. Sojern, Inc.*, No. 3:25-CV-02600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (finding a plaintiff had not adequately alleged a CIPA violation because she had not plausibly alleged that the defendant intercepted a communication while it was in transit).

<u>Contents</u>. Truist argued in the Motion that Plaintiff fails to allege that the LinkedIn Insight Tag acted to intercept or eavesdrop the contents of his communications because Plaintiff's own allegations show that Plaintiff's "browser[] w[as] communicating directly with the alleged eavesdropper because [Plaintiff's] browser[] w[as] sending [] requests directly to [LinkedIn's] servers." Mot. at 22 (quoting *Cole*, 2025 WL 88703, at *2). Plaintiff summarily claims that Truist is incorrect and does not address the cited caselaw. Opp. at 19.

<u>Intentionality</u>. Truist explained in the Motion that Plaintiff had failed to plead facts showing that Truist "acted consciously and deliberately" in supposedly allowing LinkedIn to intercept communications. Mot. at 20 (quoting *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015)). Plaintiff still fails to point to non-conclusory allegations of such intent. *See* Opp. at 15–16. Plaintiff's claim that "computer code does not get embedded on Defendant's website by accident," Opp. at 15, does not meet that standard.

For these reasons and those explained in the Motion, the Wiretap Claims fail as a matter of law and should be dismissed.

**3. The Constitutional Claim (Count IV) Should Be Dismissed for Failure to Plead a Highly Offensive Intrusion.**

As Truist explained in the Motion, Plaintiff must plead an intrusion that is "so serious . . . as to constitute an egregious breach of the social norms such that the breach is highly offensive." Mot. at 23 (quoting *Cousin*, 681 F. Supp. 3d at 1126 (internal quotation marks omitted)). Here, Plaintiff merely makes a series of generalized and conjectural allegations that Truist intercepted and disclosed personal information to LinkedIn. And the absence of any factual support for Plaintiff's allegations forecloses his claims. *See* Mot. at 25 (citing *Doe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)).

Plaintiff ignores these cases in his Opposition. *See* Opp. at 20–22. Plaintiff argues without adequate legal support that Truist's conduct somehow exceeded "routine commercial behavior." *See* Opp. at 21 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding plaintiffs failed to plead a highly offensive intrusion of privacy)). Plaintiff also has no legal support for his argument that the alleged disclosure constituted an "egregious breach of privacy." Opp. at 21–22.

For these reasons and those explained in the Motion, Plaintiff's constitutional claim (Count IV) should be dismissed.

## III. CONCLUSION

For these reasons, Truist respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: September 25, 2025

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally
Tayler G. Bragg

*Attorneys for Defendant Truist Financial Corporation*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Truist Financial Corporation, certifies that this brief contains 5,516 words, which complies with the word limit of L.R. 11-6.1.[6]

Dated: September 25, 2025

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally

[6] When Truist filed its Motion on August 15, 2025, the Court's then-current Civil Standing Order provided, "Pursuant to Local Rule 11-6, Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed twenty-five (25) pages absent leave of Court. Replies shall not exceed ten (10) pages." For that reason, Truist complied with the 25-page limit. The Court's current Civil Standing Order (dated August 27, 2025) provides, "With the exception of Rule 56 Motions which have specific requirements as set forth in Section IX.D, absent leave of Court, Memoranda of Points and Authorities in support of or in opposition to motions must comply with the limitations set forth by Local Rule 11-6." Accordingly, Truist now complies with the 7,000-word requirement.