Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
830 Brickell Plaza, Suite 4300
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101

Tayler G. Bragg (admitted *pro hac vice*)
tbragg@sidley.com
SIDLEY AUSTIN LLP
2323 Cedar Springs, Suite 2600
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Attorneys for Defendant*
TRUIST FINANCIAL CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRIS GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TRUIST FINANCIAL CORPORATION,

Defendant.

Case No. 2:25-cv-05753-MEMF-PVC

Assigned to:
Hon. Maame Ewusi-Mensah Frimpong

**DEFENDANT TRUIST FINANCIAL CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Action Filed: June 24, 2025
Trial Date: Not set

Defendant Truist Financial Corporation ("Truist")[1] hereby submits this Answer and Affirmative Defenses (the "Answer") to the Complaint filed by Plaintiff Chris Garcia ("Plaintiff"). Truist states as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all Truist account holders who have accessed and used truist.com (the "Website") to apply for a loan or credit card.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

2. Defendant provides financial services to consumers through the Website it maintains, where Truist account holders can manage and apply for credit cards, loans, and select payment plans. To apply for one of Defendant's financial products, users must share personally identifying information, including their citizenship, housing status, and employment information. When consumers provide this information on their applications, they expect that such confidential information and activity will be protected and not disclosed to unknown third parties. Such expectations are based, in part, on the legal protections afforded to such information.

**ANSWER:** Truist denies the allegations in the first sentence of this paragraph. Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding users' actions and consumers' expectations and, therefore, denies such allegations in this paragraph. Any other allegations are denied.

3. Despite reasonable expectations of privacy, and Defendant's legal duties to prevent the disclosure of such private information, Defendant discloses information provided by consumers on loan and credit card applications to LinkedIn

[1] Based on the allegations in the Class Action Complaint, Dkt. 1 (the "Complaint"), Truist Financial Corporation is not the proper defendant.

Corporation ("LinkedIn"). These disclosures include communications that contain sensitive and confidential information – i.e., "nonpublic personal information," as defined by 16 C.F.R. § 313.3 (the "Gramm-Leach-Bliley Act" or "GLBA") and Cal. Fin. Code § 4050, et seq. (the "California Financial Information Privacy Act" or "CalFIPA").

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' expectations and, therefore, denies such allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

4. Through the acts alleged herein, Defendant violated the Electronic Communications Privacy Act, 18 U.S.C. 2511, *et seq*. ("ECPA") and the California Invasion of Privacy Act ("CIPA") §§ 631 and 632 by disclosing Plaintiff's and Class Members' private and confidential information without consent.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

## PARTIES

5. Plaintiff Chris Garcia is a resident and citizen of Los Angeles, California. On or around May 2025, Plaintiff applied for a LightStream unsecured loan through the Website. During the application process, Defendant required Plaintiff to provide private information related to his citizenship, housing status, and employment information. Plaintiff applied for a loan through the Website using the same device and browser used to access his LinkedIn account. When creating his LinkedIn account, Plaintiff provided certain information to LinkedIn, including his full name. Unbeknownst to Plaintiff, Defendant disclosed his personally identifiable information ("PII") to LinkedIn—including communications that contained

Plaintiff's confidential, "nonpublic personal information" as defined by the GLBA and CalFIPA. Neither Defendant nor LinkedIn procured Plaintiff's prior consent to the sharing of his private and protected information.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's residence, citizenship, application process, device, browser, LinkedIn account, and knowledge and, therefore, denies such allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

6. Defendant Truist Financial Corporation is a North Carolina corporation with its principal place of business at 214 North Tryon Street, Charlotte, North Carolina 28202. Defendant is a provider of financial products and services including bank accounts, credit cards, and loans, to individuals throughout the United States, including in California. Defendant also provides a variety of financial services to Californians, whom it knows to reside in the State based on address information that individuals must provide in order to open an account or apply for a financial product or service with Truist. Defendant chose to embed the LinkedIn Insight Tag on its Website, which it owns and operates.

**ANSWER:** Truist admits the allegations in the first sentence of this paragraph. Truist denies the remaining allegations in this paragraph. Any other allegations are denied.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the Electronic Communications Privacy Act, 18 U.S.C. § 2511). This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Further, this action is a putative class action, and Plaintiff alleges that at least 100 people comprise

the proposed class, that the combined claims of the proposed class members exceed $5,000,000 exclusive of interest and costs, and that at least one member of the proposed class is a citizen of a state different from the defendant.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist. This paragraph contains legal conclusions to which no response is required. Any other allegations are denied.

8. This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a California citizen, and submits to the jurisdiction of the Court. Further, the Defendant has, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and operation of its services to residents within this District and throughout California. Additionally, Plaintiff, while in California, applied for a loan through Defendant's Website.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's residency, citizenship, and location and, therefore, denies such allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. Any other allegations are denied.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant transacts significant business within this District, Plaintiff resides in this District, and the acts that gave rise to this cause of action occurred within this District.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Any other allegations are denied.

## FACTUAL BACKGROUND

**I. The California Invasion of Privacy Act**

10. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

11. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

12. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second*

> *auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added, internal citations omitted).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

13. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection ... with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication ... read[ing], or attempt[ing] to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use . . . any information so obtained."

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

14. CIPA § 631(a) also penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

15. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

16. A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

17. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

**II. The Gramm-Leach-Bliley Act and California Financial Information Privacy Act**

18. As Congress and the California Legislature recognized, "nonpublic personal information" is confidential.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

19. Per 16 C.F.R. § 313.3(n):

(1) Nonpublic personal information means:

(i) Personally identifiable financial information; and

(ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

20. Per 16 C.F.R. § 313.3(o):

(1) Personally identifiable financial information means any information:

(i) A consumer provides to [a financial institution] to obtain a financial product or service from [a financial institution];

(ii) About a consumer resulting from any transaction involving a financial product or service between [a financial institution] and a consumer; or

(iii) [A financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer.

(2) Examples—(i) Information included. Personally identifiable financial information includes:

(A) Information a consumer provides to [a financial institution]on an application to obtain a loan, credit card, or other financial product or service;

(B) Account balance information, payment history, overdraft history, and credit or debit card purchase information;

(C) The fact that an individual is or has been one of [a financial institution's] customers or has obtained a financial product or service from [a financial institution];

(D) Any information about [a financial institution's] consumer if it is disclosed in a manner that indicates that the individual is or has been [a financial institution's] consumer;

(E) Any information that a consumer provides to [a financial institution] or that [a financial institution]or [its] agent otherwise obtain[s] in connection with collecting on, or servicing, a credit account; and

(F) Any information [a financial institution] collect[s] through an Internet "cookie" (an information collecting device from a web server).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

21. Pursuant to 16 C.F.R. § 313.3(k)(1):

> a financial institution "means any institution the business of which is engaging in an activity that is financial in nature or incidental to such financial activities as described in section 4(k) of the Bank Holding Company Act of 1956, 12 U.S.C. 1843(k). An institution that is significantly engaged in financial activities, or significantly engaged in activities incidental to such financial activities, is a financial institution."

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

22. Pursuant to 16 C.F.R. § 313.3(k)(1), Truist is a financial institution.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

23. In passing CalFIPA, the California Legislature "intend[ed] for financial institutions to provide their consumers notice and meaningful choice about how consumers' nonpublic personal information is shared or sold by their financial institutions[]" and "inten[ded] . . . to afford persons greater privacy protections than those provided in Public Law 106-102, the federal Gramm-Leach-Bliley Act[.]" Cal. Fin. Code § 4051(a)-(b).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

24. Cal. Fin. Code § 4052(a) provides that:

> "Nonpublic personal information" means personally identifiable financial information (1) provided by a consumer to a financial institution, (2) resulting from any transaction with the consumer or any service performed for the consumer, or (3) otherwise obtained by the financial institution. Nonpublic personal information does not include publicly available information that the financial institution has a reasonable basis to believe is lawfully made available to the general public from (1) federal, state, or local government records, (2) widely distributed media, or (3) disclosures to the general public that are required to be made by federal, state, or local law. Nonpublic personal information shall include any list, description, or other grouping of consumers, and publicly available information pertaining to them, that is derived using any nonpublic personal information other than publicly available information, but shall not include any list, description, or other grouping of consumers, and publicly available information pertaining to them, that is derived without using any nonpublic personal information.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

25. According to Cal. Fin. Code § 4052(b):

> "Personally identifiable financial information" means information (1) that a consumer provides to a financial institution to obtain a product or service from the financial

institution, (2) about a consumer resulting from any transaction involving a product or service between the financial institution and a consumer, or (3) that the financial institution otherwise obtains about a consumer in connection with providing a product or service to that consumer. Any personally identifiable information is financial if it was obtained by a financial institution in connection with providing a financial product or service to a consumer. Personally identifiable financial information includes all of the following:

(2) Account balance information, payment history, overdraft history, and credit or debit card purchase information.

(3) The fact that an individual is or has been a consumer of a financial institution or has obtained a financial product or service from a financial institution.

(4) Any information about a financial institution's consumer if it is disclosed in a manner that indicates that the individual is or has been the financial institution's consumer.

(5) Any information that a consumer provides to a financial institution or that a financial institution or its agent otherwise obtains in connection with collecting on a loan or servicing a loan.

(6) Any personally identifiable financial information collected through an Internet cookie or an information collecting device from a Web server.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

26. "Except as provided in Sections 4053, 4054.6, and 4056, a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates." Cal. Fin. Code § 4052.5.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

27. Thus, Plaintiff's and Class Members' "nonpublic personal information" is confidential, under both federal and California law. Nonetheless, such information was intercepted in transit by the LinkedIn Insight Tag—as enabled by Defendant—and none of the parties, Defendant nor LinkedIn, procured Plaintiff's and Class Members' consent prior to this interception.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff and putative class members' expectations or regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

28. This pattern of conduct by Defendant flouts the GLBA's and CalFIPA's respective purposes of enhancing "financial privacy[.]"

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

**III. Overview of Defendant's Website**

29. Defendant owns and operates the Website. Unbeknownst to consumers, Defendant has integrated the LinkedIn Insight Tag wiretap into the Website to assist with its marketing efforts.

**ANSWER:** Truist denies that it owns and operates the Website. Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' expectations and experiences and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

30. On the Website, users can, *inter alia*, search for and apply for financial products and services, including credit cards and loans. When doing so, Website users provide Defendant with confidential information, including "nonpublic personal information" under the GLBA and CalFIPA, such as their PII (*e.g.* their citizenship status, housing status, employment status, and employment industry) and information about their financial activity with Truist (*e.g.* application status).

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding users' expectations and experiences and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

31. Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, or otherwise enables LinkedIn's Insight Tag to eavesdrop on those confidential communications.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class

members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

32. Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from Website users typing into data fields, conveying responses to questions and prompts, and actively making other selections. All of the foregoing is information created through the intent of Website users: information created by and in response to Website users' communicative inputs; information created by and in response to Website users' intended messages to the Website and Defendant; and information created by and in response to Website users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding users' expectations and experiences and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Truist also denies the allegations in this paragraph relating to users' interaction with the Website. Any other allegations are denied.

## IV. Defendant Discloses Consumers' Private Information Through LinkedIn's Insight Tag

### A. LinkedIn's Platform and Business Tools

33. LinkedIn markets itself as "the world's largest professional network on the internet[.]" But LinkedIn is no longer simply a tool to help users find jobs or

expand their professional network. LinkedIn has moved into the marketing and advertising space, and boasts of its ability to allow potential advertisers to "[r]each 1 billion+ professionals around the world" via its Marketing Solutions services. Recently, LinkedIn was projected as being responsible for "roughly 0.9 percent of the global ad revenue" which included approximately $5.91 billion in advertising revenue in 2022.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

34. According to LinkedIn, "[t]argeting is a foundational element of running a successful advertising campaign — [g]etting your targeting right leads to higher engagement, and ultimately, higher conversion rates." Targeting refers to ensuring that advertisements are targeted to, and appear in front of, the target demographic for an advertisement. To that end, LinkedIn's Marketing Solutions services allow potential advertisers to "[b]uild strategic campaigns" targeting specific users. LinkedIn's "marketing solutions allow advertisers to select specific characteristics to help them reach their ideal audience. The ads [users] see on LinkedIn are then targeted to provide content relevant to [the users]."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

35. As a result of its activities and operation of the LinkedIn Insight Tag, LinkedIn is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

36. The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

37. Such information is extremely valuable to marketers and advertisers because the inferences derived from users' personal information and communications allows marketers and advertisers, including healthcare providers and insurance companies, to target potential customers.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding marketers and advertisers and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

38. For example, through the use of LinkedIn's Audience Network, marketers and advertisers are able to expand their reach and advertise on sites other than LinkedIn to "reach millions of professionals across multiple touchpoints." According to Broc Munro of Microsoft, "[w]e gravitate towards social platforms like LinkedIn to achieve more targeted marketing engagement. However, we know that our audiences don't spend all their time on social media. LinkedIn Audience Network enables us to expand our reach to trusted sites while still respecting our audience targeting. This increases the impact of our advertising."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn or Broc Munro of Microsoft and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

39. In July 2022, "LinkedIn Marketing Solutions surpassed $5 billion in annual revenue[.]"That figure is "expected to further grow to reach 10.35 billion U.S. dollars by 2027."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

40. According to LinkedIn, the LinkedIn Insight Tag, also called the Insight Tag is "[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences." LinkedIn represents that the LinkedIn Insight Tag "enable[s] in-depth campaign reporting and unlock[s] valuable insights about your website visitors."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

41. LinkedIn's current iteration of its Insight Tag is a JavaScript-based code which allows for the installation of its software. A critical feature allows the LinkedIn Insight Tag to track users, even when third-party cookies are blocked. LinkedIn "recommend[s] using the JavaScript-based Insight Tag or Conversions API" because third-party cookie settings are being deprecated across the industry. Embedding the JavaScript as a first-party cookie causes users' browsers to treat the LinkedIn Insight Tag as though it is offered by the website being visited, rather than by LinkedIn. Doing so ensures that the third-party cookie-blocking functions of modern web browsers do not prevent LinkedIn from collecting data through its Pixel. Instead, the LinkedIn Pixel is shielded with the same privacy exemptions offered to first-party cookies.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

42. When a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

43. These cookies also include data that differentiate users from one another and can be used to link the data collected to the user's LinkedIn profile.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

44. The HTTP request about an individual who has previously signed into LinkedIn includes requests from the "li_sugr" and "lms_ads" cookies. Each of these cookies are used by LinkedIn "to identify LinkedIn Members off LinkedIn" for advertising purposes.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

45. For example, the "li_sugr" cookie is "[u]sed to make a probabilistic match of a user's identity." Similarly, the "lms_ads" cookie is "[u]sed to identify LinkedIn Members off LinkedIn for advertising."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

46. A LinkedIn profile contains information including an individual's first and last name, place of work, contact information, and other personal details. Based

on information it obtains through the LinkedIn Pixel, Defendant LinkedIn is able to target its account holders for advertising.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

47. LinkedIn never receives consent from users to intercept and collect electronic communications containing their sensitive and unlawfully-disclosed information. In fact, LinkedIn expressly warrants the opposite.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

48. When first signing up, a user agrees to the User Agreement. By using or continuing to use LinkedIn's Services, users agree to two additional agreements: the Privacy Policy and the Cookie Policy. For California residents, LinkedIn also publishes a California Privacy Disclosure.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

49. LinkedIn's Privacy Policy begins by stating that "LinkedIn's mission is to connect the world's professionals . . . . Central to this mission is our commitment to be transparent about the data we collect about you, how it is used and with whom it is shared."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

50. The Privacy Policy goes on to describe what data LinkedIn collects from various sources, including cookies and similar technologies. LinkedIn states "we use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services. We also allow some others to use cookies as described in our Cookie Policy."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

51. However, LinkedIn offers an express representation: "**We will only collect and process personal data about you where we have lawful bases**."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

52. Despite this explicit representation, LinkedIn intentionally intercepts and receives sensitive and unlawfully disclosed information in violation of state and federal privacy laws.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

53. Users never choose to provide sensitive information to LinkedIn because, among other reasons, they never know whether a particular website uses the LinkedIn Insight Tag, and, if so, what sensitive personal data it collects.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding users' expectations and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

**B. How Defendant Disclosed Plaintiff's and Class Members' Protected Personally Identifiable Information and Financial Information Through the LinkedIn Insight Tag**

54. Defendant Truist is a corporation that focuses on providing financial services, such as loans.

**ANSWER:** Truist denies the allegations in this paragraph.

55. Truist owns and operates the Website, where it encourages prospective customers to apply for its financial products and services.

**ANSWER:** Truist denies the allegations in this paragraph.

56. At all relevant times Defendant's Website utilized the LinkedIn Insight Tag.

**ANSWER:** Truist denies the allegations in this paragraph. Any other allegations are denied.

57. Through the LinkedIn Insight Tag, Defendant shared its applicants' identities and online activity, including information related to consumers seeking to procure financial products and/or services, with one of the world's largest social media companies for targeted advertising purposes.

**ANSWER:** Truist denies the allegations in this paragraph. Any other allegations are denied.

58. Defendant allows and encourages consumers to apply for financial services on its Website. Consumers can click "Loans" to explore loan services. Once

a consumer clicks "Loans", Truist discloses the fact that the consumer is seeking loan services to LinkedIn.

**<u>Figure 1</u>:** [As excerpted in the Complaint]

**<u>Figure 2</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist admits that consumers may apply for financial services on the Website. Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

59. After a consumer clicks the "Loans" link, they are presented with a drop-down menu to select a loan type, such as "Auto Loan". Once a consumer clicks on a loan type, such as the "Auto Loan" link for example, Defendant discloses the fact that the consumer is seeking auto loan services to LinkedIn.

**<u>Figure 3</u>:** [As excerpted in the Complaint]

**<u>Figure 4</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

60. Next, consumers are brought to the following webpage to select what type of auto loan they would like to apply for. Defendant provides some recommended loan types, such as the LightStream unsecured loan, for which the consumer is prompted to "Apply Now". After a consumer clicks "Apply Now", Defendant discloses the fact that the consumer has begun an application for a specific type of loan to LinkedIn.

**<u>Figure 5</u>:** [As excerpted in the Complaint]

**<u>Figure 6</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

61. Next, consumers are brought to the following webpage, which prompts them to start their application. After a consumer clicks "Start Application," Defendant discloses the fact that they have started their application to LinkedIn.

**Figure 7:** [As excerpted in the Complaint]

**Figure 8:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

62. Next, consumers are brought to the following webpage, where they are prompted to confirm the loan's purpose. After selecting a loan purpose, such as "Auto," Defendant discloses the fact that a consumer has selected "Auto" as their loan purpose to LinkedIn.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

63. Consumers are also prompted to select a type of auto loan (i.e. used auto purchase from dealer) from a drop-down menu. After selecting a type of auto loan, Defendant discloses the type of auto loan that the consumer selected to LinkedIn.

**Figure 9:** [As excerpted in the Complaint]

**Figure 10:** [As excerpted in the Complaint]

**Figure 11:** [As excerpted in the Complaint]

**Figure 12:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

64. Next, consumers are brought to a webpage where they are prompted to input their desired loan amount and payment method, after which they are presented with a number of term options to select from. After selecting one of the loan terms, consumers are prompted to select whether they are applying themselves or with another person.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

65. Next, consumers are brought to another part of the loan application process which Truist refers to as the **"Personal Information"** section. This section begins on a webpage where consumers are prompted by Defendant to input sensitive PII such as name, contact information, social security number, and citizenship status. After filling in this information, Defendant discloses the consumer's citizenship status to LinkedIn.

**<u>Figure 13</u>:** [As excerpted in the Complaint]

**<u>Figure 14</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

66. Next, Defendant prompts consumers to provide them with their sensitive housing information, such as their address, housing status, and monthly housing

payment. After a consumer provides this information, Defendant discloses the consumer's housing status to LinkedIn.

**<u>Figure 15</u>:** [As excerpted in the Complaint]

**<u>Figure 16</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

67. Afterwards, Defendant prompts consumers to provide them with their sensitive employment information, such as their employment status, industry, salary, and employer information. After the consumer provides this information, Defendant discloses the consumer's employment status and employment industry to LinkedIn.

**<u>Figure 17</u>:** [As excerpted in the Complaint]

**<u>Figure 18</u>:** [As excerpted in the Complaint]

**<u>Figure 19</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

68. Finally, consumers are prompted to click "Submit Application." After a consumer clicks "Submit Application," Defendant discloses the fact that the consumer submitted an application to LinkedIn.

**<u>Figure 20</u>:** [As excerpted in the Complaint]

**<u>Figure 21</u>:** [As excerpted in the Complaint]

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

69. Each of these interceptions were accompanied by the li_sugr and lms_ads cookies.

**ANSWER:** Truist denies the allegations in this paragraph. Any other allegations are denied.

70. The information disclosed by Defendant allows LinkedIn to know the identities of specific individuals as well as information related to the financial services they are receiving. This allows these companies, including Defendant, to profit from this information for targeted advertising purposes.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding consumers' clicks and experiences and LinkedIn's knowledge and, therefore, denies the allegations in this paragraph. Any other allegations are denied.

71. When users share their personal information with financial services, they expect this information to be kept confidential. Moreover, when consumers seek a specific service from financial websites, they also expect the highly sensitive information they provide on their applications to be kept confidential.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding users' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

72. Through the above-listed LinkedIn tracking services, which the Defendant used via the software code installed, integrated and embedded into the Website, the Defendant disclosed its applicants' legally protected information.

**ANSWER:** Truist denies the allegations in this paragraph. Any other allegations are denied.

73. Defendant engages in this deceptive conduct for its own profit at the expense of its customers' privacy. Such disclosures are an invasion of privacy, lead to harassing targeted advertising, and violate federal and state law.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

**CLASS ALLEGATIONS**

74. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Classes:

**Nationwide Class**: All natural persons in the United States who, during the class period, maintained a LinkedIn account and applied for a credit card or loan on the Website.

**California Subclass**: All natural persons in the State of California who, during the class period, maintained a LinkedIn account and applied for a credit card or loan on the Website.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

75. Plaintiff reserves the right to modify the Class definitions, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

**ANSWER:** This paragraph contains legal conclusions and purported reservations of rights to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

76. The following people are excluded from the Classes: (1) any Judge presiding over this action and members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or

its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist and purports to exclude certain people from the putative class, but denies that this case is suitable for class certification. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

77. **Numerosity**: The number of persons within the Classes is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendant's and LinkedIn's records.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

78. **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of the Classes, and which may be determined without reference to the individual

circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated the ECPA, the CIPA §§ 631 and 632, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

79. **Typicality**: The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other class members, visited the Website and had his confidential electronic communications intercepted and disclosed to LinkedIn through LinkedIn's Insight Tag.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

80. **Adequate Representation**: Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

81. **Superiority**: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and

expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

## CAUSES OF ACTION

## COUNT I

### Violation of the Electronic Communications Privacy Act

### 18 U.S.C. § 2511, *et seq.*

82. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

**ANSWER:** Truist incorporates its responses set forth above, including but not limited to Truist's responses to the allegations in Paragraphs 1 through 81, as if fully set forth herein. Any other allegations are denied.

83. Plaintiff brings this claim on behalf of himself and members of the Class.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

84. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

85. The ECPA protects both sending and the receipt of communications.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

86. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

87. The transmission of Plaintiff's PII and financial information to Defendant's Website qualify as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

88. The transmission of PII and financial information between Plaintiff and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,...data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

89. The ECPA defines "contents," when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. 18 U.S.C. § 2510(8).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

90. The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

91. The ECPA defines "electronic, mechanical, or other device," as "any device...which can be used to intercept a[n]...electronic communication[.]" 18 U.S.C. § 2510(5).

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

92. The following instruments constitute "devices" within the meaning of the ECPA:

a The computer codes and programs Defendant and LinkedIn used to track Plaintiff and Class Members communications while they were navigating the Website;

b Plaintiff's and Class Members' browsers;

c Plaintiff's and Class Members' mobile devices;

d Defendant's and LinkedIn's web and ad servers;

e The plan the Defendant and LinkedIn carried out to effectuate the tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser to navigate the Website.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

93. Plaintiff and Class Members' interactions with Defendant's Website are electronic communications under the ECPA.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' Website interactions and, therefore, denies such allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

94. By utilizing and embedding the tracking technology provided by LinkedIn on its website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

95. Specifically, Defendant intercepted—in real time—Plaintiff's and Class Members' electronic communications via the tracking technology provided by LinkedIn on its website, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' PII and financial information to LinkedIn.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

96. The Defendant intercepted communications that include, but are not necessarily limited to, communications to/from Plaintiff and Class Members regarding PII, including their identities and information related to the specific financial product they were applying for, as well as information related to their citizenship, housing status, and employment information. This confidential information is then monetized for targeted advertising purposes, among other things.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

97. By intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to LinkedIn through the LinkedIn Insight Tag, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

98. By intentionally using, or endeavoring to use, the contents of Plaintiff's and Class members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

99. Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, the GLBA, CalFIPA, and invasion of privacy, among others.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

100. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State. Here, as alleged above, Defendant violated a provision of the Gramm-Leach-Bliley Act, 16 C.F.R. § 313. This provision imposes a criminal penalty for knowingly disclosing "nonpublic personal information" to a third party. GLBA defines nonpublic personal information as:

> Any information that is not publicly available and that: a consumer provides a financial institution to obtain a financial product or service from the institution; results from a transaction between the consumer and the institution involving a financial product or service; or a financial institution otherwise obtains about a consumer in connection with providing a financial product or service.[2]

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

[2] 16 C.F.R. § 313

101. Plaintiff's information that Defendant disclosed to LinkedIn qualifies as nonpublic personal information (including information related to their citizenship, housing status, and employment), and Defendant violated Plaintiff's and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 16 C.F.R. § 313. Defendant specifically used the tracking technology provided by LinkedIn to track and utilize Plaintiff's and Class Members' PII for financial gain.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

102. Defendant was not acting under the color of law to intercept Plaintiff's and Class Members' wire or electronic communications.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

103. Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy. Plaintiff and Class Members, all of whom are users of the Website, had a reasonable expectation that Defendant would not redirect their communications to LinkedIn without their knowledge or consent.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and experiences and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no

response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

104. The foregoing acts and omission therefore constitute numerous violations of 18 U.S.C. § 2511(1), *et seq.*

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

105. As a result of each and every violation thereof, on behalf of himself and the Class, Plaintiff seeks statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. § 2511, *et seq.* under 18 U.S.C. § 2520.

**ANSWER:** Truist denies the allegations in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

## COUNT II

### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631(a)

106. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Truist incorporates its responses set forth above, including but not limited to Truist's responses to the allegations in Paragraphs 1 through 105, as if fully set forth herein. Any other allegations are denied.

107. Plaintiff brings this claim against Defendant individually and on behalf of the California Subclass.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

108. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus,

to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

109. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

110. The LinkedIn Insight Tag is a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

111. LinkedIn is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, LinkedIn has the capability to use and do use the wiretapped information for its own purposes. Accordingly, LinkedIn is a third party to any communication between Plaintiff and California Subclass Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is

required, Truist denies the allegations in this paragraph. Any other allegations are denied.

112. At all relevant times, LinkedIn willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and members of the California Subclass, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

113. At all relevant times, LinkedIn used or attempted to use the communications intercepted to, *inter alia*, monitor and improve their products and services.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

114. At all relevant times, Defendant aided, agreed with, employed, permitted, or otherwise enabled LinkedIn to wiretap Plaintiff and members of the California Subclass through the LinkedIn Insight Tag and to accomplish the wrongful conduct at issue here.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

115. Plaintiff and members of the California Subclass did not provide their prior consent [sic] LinkedIn's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and California Subclass members' electronic communications. Nor did Plaintiff and California Subclass members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling LinkedIn's conduct.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and experiences and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

116. The wiretapping of Plaintiff and California Subclass members occurred in California, where Plaintiff and California Subclass members accessed the Website and where the LinkedIn Insight Tag—as enabled by Defendant—routed Plaintiff's and California Subclass members' electronic communications to its servers.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations, locations, and experiences and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that

a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

117. Pursuant to Cal. Penal Code § 637.2, Plaintiff and California Subclass members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

**ANSWER:** Truist denies the allegations in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

## COUNT III

## Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 632

118. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Truist incorporates its responses set forth above, including but not limited to Truist's responses to the allegations in Paragraphs 1 through 117, as if fully set forth herein. Any other allegations are denied.

119. Plaintiff brings this claim against Defendant individually and on behalf of the California Subclass.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

120. CIPA § 632(a) prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the

presence of one another or by means of a telegraph, telephone, or other device, except a radio.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

121. The LinkedIn Insight Tag is an "electronic amplifying or recording device."

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

122. Per 16 C.F.R. § 313.3(n):

(1) Nonpublic personal information means:

(i) Personally identifiable financial information; and

(ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

123. Per 16 C.F.R. § 313.3(o):

(1) Personally identifiable financial information means any information:

(i) A consumer provides to [a financial institution] to obtain a financial product or service from [a financial institution];

(ii) About a consumer resulting from any transaction involving a financial product or service between [a financial institution] and a consumer; or

(iii) [A financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer.

(2) Examples—(i) Information included. Personally identifiable financial information includes:

(B) Account balance information, **payment history**, overdraft history, and credit or debit card purchase information;

(C) The fact that an individual is or has been one of [a financial institution's] customers or **has obtained a financial product or service** from [a financial institution];

(D) Any information about [a financial institution's] consumer if it is disclosed in a manner that **indicates that the individual is or has been [a financial institution's] consumer**;

(E) Any information that a consumer provides to [a financial institution] or that [a financial institution]or [its] agent otherwise obtain[s] in connection with collecting on, or servicing, a credit account;

(F) Any **information [a financial institution] collect[s] through an Internet "cookie"** (an information collecting device from a web server); and

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is

required, Truist denies the allegations in this paragraph. Any other allegations are denied.

124. Pursuant to Cal. Fin. Code § 4052(a):

> "Nonpublic personal information" means personally identifiable financial information (1) provided by a consumer to a financial institution, (2) resulting from any transaction with the consumer or any service performed for the consumer, or (3) otherwise obtained by the financial institution. Nonpublic personal information does not include publicly available information that the financial institution has a reasonable basis to believe is lawfully made available to the general public from (1) federal, state, or local government records, (2) widely distributed media, or (3) disclosures to the general public that are required to be made by federal, state, or local law. Nonpublic personal information shall include any list, description, or other grouping of consumers, and publicly available information pertaining to them, that is derived using any nonpublic personal information other than publicly available information, but shall not include any list, description, or other grouping of consumers, and publicly available information pertaining to them, that is derived without using any nonpublic personal information.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

125. Pursuant to Cal. Fin. Code § 4052(b):

> "Personally identifiable financial information" means information (1) that a consumer provides to a financial institution to obtain a product or service from the financial institution, (2) about a consumer resulting from any transaction involving a product or service between the financial institution and a consumer, or (3) that the financial institution otherwise obtains about a consumer in connection with providing a product or service to that consumer. Any personally identifiable information is financial if it was obtained by a financial institution in connection with providing a financial product or service to a consumer. Personally identifiable financial information includes all of the following:
>
> (2) Account balance information, payment history, overdraft history, and credit or debit card purchase information.
>
> (3) The fact that an individual is or has been a consumer of a financial institution or has obtained a financial product or service from a financial institution.
>
> (4) Any information about a financial institution's consumer if it is disclosed in a manner that indicates that the individual is or has been the financial institution's consumer.
>
> (5) Any information that a consumer provides to a financial institution or that a financial institution or its agent otherwise obtains in connection with collecting on a loan or servicing a loan.
>
> (6) Any personally identifiable financial information collected through an Internet cookie or an information collecting device from a Web server.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

126. "Except as provided in Sections 4053, 4054.6, and 4056, a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates." Cal. Fin. Code § 4052.5.

**ANSWER:** This paragraph contains legal conclusions and quotes legal authority to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

127. Thus, Plaintiff's and California Subclass members' "nonpublic personal information" is confidential, under federal and California law.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

128. At all relevant times, Defendant assisted LinkedIn in eavesdropping upon and recording such confidential communications of Plaintiff and California Subclass members, on the one hand, and Defendant, on the other.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to

which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

129. When communicating with Defendant, Plaintiff and California Subclass members had an objectively reasonable expectation of privacy, based on the GLBA and CalFIPA. Thus, Plaintiff and California Subclass members did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other, third-party entities (like LinkedIn), would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and California Subclass members.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

130. Plaintiff and California Subclass members did not consent to any of LinkedIn's actions. Nor have Plaintiff or California Subclass members consented to any of LinkedIn's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and California Subclass members.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

131. Pursuant to Cal. Penal Code § 637.2, Plaintiff and California Subclass members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

**ANSWER:** Truist denies the allegations in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

**COUNT IV**

**Invasion of Privacy Under California's Constitution**

132. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

**ANSWER:** Truist incorporates its responses set forth above, including but not limited to Truist's responses to the allegations in Paragraphs 1 through 131, as if fully set forth herein. Any other allegations are denied.

133. Plaintiff brings this claim on behalf of himself and members of the California Subclass against Defendant.

**ANSWER:** Truist admits that Plaintiff purports to bring a class action lawsuit against Truist, but denies any liability to Plaintiff or the putative class. Any other allegations are denied.

134. The highly sensitive and personal information of Plaintiff and California Subclass members consists of private and confidential facts and information regarding Plaintiff's and California Subclass members' financial services that were never intended to be shared beyond private communications on the Website and the consideration of finance professionals.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is

required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

135. Plaintiff and California Subclass members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third Parties, such as LinkedIn.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

136. Defendant owed a duty to Plaintiff and California Subclass members to keep their PII confidential.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

137. Defendant's unauthorized disclosure of Plaintiff's and California Subclass members' PII to LinkedIn, one of the world's largest technology and marketing companies, is highly offensive to a reasonable person.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

138. Defendant's willful and intentional disclosure of Plaintiff's and California Subclass members' PII constitutes an intentional interference with Plaintiff's and California Subclass members' interest in solitude and/or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

139. Defendant's conduct constitutes an intentional physical or sensory intrusion on Plaintiff's and California Subclass members' privacy because Defendant facilitated LinkedIn's simultaneous eavesdropping and wiretapping of confidential communications.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

140. Defendant failed to protect Plaintiff's and California Subclass members' PII and financial information and acted knowingly when it installed the tracking technology onto the Website because the purpose of said technology is to track and disseminate users' communications on the Website for marketing and advertising.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph.

This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

141. Because Defendant intentionally and willfully incorporated the tracking technology onto the Website and encouraged individuals to use and interact with the Website and the services thereon, Defendant had notice and knew that this practice would cause injury to Plaintiff and the California Subclass.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

142. As a proximate result of Defendant's acts and omissions, the PII and financial information of Plaintiff and California Subclass members was disclosed to LinkedIn, causing Plaintiff and the California Subclass to suffer damages.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

143. Plaintiff, on behalf of himself and California Subclass members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, loss of time and opportunity costs, lost benefit of the bargain and pre-judgment interest and costs.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations

in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

144. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the California Subclass since their PII and financial information is still maintained by Defendant and is still in the possession of LinkedIn, and the wrongful disclosure of this information cannot be undone.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and regarding LinkedIn and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph. Any other allegations are denied.

145. Plaintiff and California Subclass members have no adequate remedy at law for the injuries relating to Defendant's and unauthorized third party's continued possession of their sensitive and confidential information. A judgment for monetary damages will not undo Defendant's disclosure of the information to unauthorized third party who, upon information and belief, continue to possess and utilize the information.

**ANSWER:** Truist lacks sufficient knowledge or information to form a belief concerning the truth of the allegations regarding Plaintiff's and putative class members' expectations and, therefore, denies the allegations in this paragraph. This paragraph also contains legal conclusions to which no response is required. To the extent that a response is required, Truist denies the allegations in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

146. Plaintiff, on behalf of himself and California Subclass members, further seeks injunctive relief to enjoin Defendant from intruding into the privacy and confidentiality of Plaintiff's and California Subclass members' PII and financial

information and to adhere to its common law, contractual, statutory and regulatory duties.

**ANSWER:** Truist denies the allegations in this paragraph and denies that Plaintiff and the putative class members are entitled to relief. Any other allegations are denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e) For prejudgment, interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

**ANSWER:** Truist denies that Plaintiff is entitled to any relief. To the extent that Truist has not specifically admitted any allegation herein, it is denied. Further, Truist states that it is entitled to any relief that this Court may deem just or appropriate, in equity or at law.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action and issues so triable.

**ANSWER:** Truist admits that Plaintiff demands a trial by jury on all causes of action and issues that are triable, but denies any liability to Plaintiff or the putative class.

## AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following defenses are available to Truist. Truist accordingly asserts these defenses. Upon completion of discovery, if the facts warrant, Truist may withdraw any of these defenses as may be appropriate. By setting forth these defenses, Truist does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject necessarily is relevant to Plaintiff's allegations. Truist further reserves the right to amend its Answer and to assert additional defenses and other claims, as this matter proceeds.

Further, by way of additional defenses, Truist states as follows:

1. The Court lacks personal jurisdiction over Plaintiff's claims.
2. The Complaint, and each and every count therein, fails to state a cause of action or claim upon which relief can be granted.
3. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver, or estoppel.
4. Plaintiff has suffered no cognizable injury and does not have standing to assert his claims.
5. If Plaintiff recovers any damages, such award must be reduced by all damages attributable to Plaintiff's failure to take appropriate action and mitigate damages prior to and subsequent to the institution of this action.
6. Any damage, loss, or liability sustained by Plaintiff must be reduced,

diminished, and/or barred in proportion to the wrongful conduct or persons or entities other than Truist, including third parties, under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

7. Plaintiff's claims are barred to the extent Plaintiff seeks excessive statutory or punitive damages in violation of the Due Process Clause.

8. Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law.

9. Plaintiff's claims are barred, in whole or in part, because he seeks to impose an excessive fine within the meaning of the Excessive Fines and Penalties Clause of the Eighth Amendment to the United States Constitution.

10. Plaintiff is not entitled to interest, attorney's fees, expenses, or costs in connection with this action.

11. To the extent any relief sought by Plaintiff would be duplicative of relief sought by Plaintiff or other plaintiffs in other lawsuits, subjecting Truist to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendments of the United States Constitution.

12. Plaintiff's claims are barred to the extent any relief he seeks would be barred by the statute of limitations.

13. Plaintiff's claims (or putative class members' claims) against Truist are barred, in whole or in part, because any alleged actions made by Truist was consented to by Plaintiff and/or putative class members.

14. The claims asserted herein (either by Plaintiff or Plaintiff's putative class members) may be subject to arbitration agreements agreed to by members of the putative class. Truist expressly reserves and does not waive it rights to compel arbitration of the claims of putative class

members.

15. The claims asserted herein (either by Plaintiff or Plaintiff's putative class members) may be subject to class action waivers agreed to by members of the putative class. Truist expressly reserves and does not waive it rights to enforce class action waivers agreed to by Plaintiff or putative class members.

WHEREFORE, Truist requests that the Complaint be dismissed with prejudice, that judgment be entered in favor of Truist and against Plaintiff, and that Truist be awarded the costs of this action, together with such other and further relief as may be appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Truist prays for judgment as follows:

1. That Plaintiff takes nothing by way of the Complaint;
2. That judgment be entered in favor of Truist and against Plaintiff and that the Complaint be dismissed with prejudice;
3. That Truist be awarded its costs of suit incurred in the defense of this action;
4. For a jury trial on all issues so triable; and
5. For any such other relief as this Court deems proper.

Dated: April 8, 2026

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally
Ian M. Ross
Tayler G. Bragg

*Attorneys for Defendant*
*Truist Financial Corporation*